# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============================

## ON MOTION FOR REHEARING

===============================

### NO. 03-05-00620-CV

**Texas Orthopaedic Association, Texas Medical Association and Andrew M. Kant, M.D.,
Appellants**

**v.**

**Texas State Board of Podiatric Medical Examiners; Texas Podiatric Medical Association;
and Bruce A. Scudday, D.P.M., Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
NO. GN204022, HONORABLE DARLENE BYRNE, JUDGE PRESIDING**

---

## O P I N I O N

Our opinion and judgment issued on March 14, 2008, are withdrawn, and the following opinion is substituted.

Various statutes over the years have described the practice of podiatry as the treatment of the foot, but the term "foot" has never been statutorily defined. *See, e.g.*, Tex. Occ. Code Ann. § 202.001(a)(4) (West 2004). In 2001, the Texas State Board of Podiatric Medical Examiners (the "Board") promulgated a rule defining the word "foot." *See* Tex. Occ. Code Ann. § 202.151 (West 2004) (authorizing Board to adopt rules governing practice of podiatry); 22 Tex. Admin. Code § 375.1(2) (2007) (defining foot) (the "Rule"). The Rule included in its definition, among

other things, portions of what in layman's terms is called the ankle. In response, the Texas Orthopaedic Association, the Texas Medical Association, and Andrew M. Kant, M.D. ("appellants") sought a declaration that the Rule impermissibly expanded the scope of podiatry. The district court concluded that the Rule was valid and did not exceed the Board's authority. The appellants appeal the judgment of the district court. We will reverse the district court's judgment.

## BACKGROUND

In general, the statutory provisions governing the medical treatment and diagnosis of diseases and disorders of the human body and the individuals authorized to engage in those practices are found in the Medical Practice Act. *See* Tex. Occ. Code Ann. §§ 151.001-165.160 (West 2004 & Supp. 2007). Although the Act requires compliance with its provisions to practice medicine, *see id.* § 155.001 (West 2004), the Act exempts certain individuals from compliance, *id.* § 151.052 (West 2004). The exemption relevant in this case is found in subsection 151.052(a)(5) and exempts "a licensed podiatrist engaged *strictly* in the practice of podiatry as defined by law." *Id.* § 151.052(a)(5) (emphasis added). By providing the exemption, the legislature acknowledged that there is some degree of overlap between podiatrists' and physicians' scopes of practice.

The practice of podiatry in Texas has been governed by statute since 1923. At that time, podiatrists were referred to as chiropodists, and chiropody was defined as "the diagnosis, medical and surgical treatment of ailments of the human foot." Act of March 6, 1923, 38th Leg., R.S., ch. 169, § 1, 1923 Tex. Gen. Laws 357, 357-60. In 1951, the statute was amended and defined chiropody, in relevant part, as the treatment of "any disease or disorder, physical injury or deformity, or ailment of the human foot, by any system or method." *See* Act of April 18, 1951, 52nd Leg., R.S.,

2

ch. 132, § 1, 1951 Tex. Gen. Laws 219, 219.  In 1967, the legislature renamed chiropodists as podiatrists.  *See* Act of April 12, 1967, 60th Leg., R.S., ch. 96, §§ 1, 2, 1967 Tex. Gen. Laws 181, 181-82.  The current statute provides, in relevant part, that podiatry "means the treatment of or offer to treat any disease, disorder, physical injury, deformity, or ailment of the human foot by any system or method.  The term includes podiatric medicine."  Tex. Occ. Code Ann. § 202.001(a)(4); *see* Senate Comm. on Health & Human Services, Bill Analysis, Tex. S.B. 673, 74th Leg., R.S. (1995) (stating that changes were made to statute governing podiatry because former statutes contained "antiquated and limiting language").

Pursuant to statutory authority, the Board announced in 2000 that it intended to adopt an administrative rule defining the term "foot."  *See* Tex. Occ. Code Ann. § 202.151(2) ("The board shall adopt reasonable or necessary rules and bylaws consistent with the law regulating the practice of podiatry, the law of this state, and the law of the United States to govern: . . . (2) the regulation of the practice of podiatry"); *see also id.* § 202.051 (West Supp. 2007) (detailing requirements for Board membership).  In describing the need for the definition, the Board stated that there was "uncertainty among various groups resulting from the lack of a definition" and that, without a definition, podiatrists, insurance companies, and hospitals were uncertain as to the limit of the practice of podiatry.  *See* 26 Tex. Reg. 2385, 2385 (March 23, 2001).  After receiving comments regarding the proposed definition, including objections from the Texas Orthopaedic Association and the Texas Medical Association, the Board adopted the Rule in 2001.  *See* 22 Tex. Admin. Code § 375.1(2); 26 Tex. Reg. at 2390.  The Rule provides as follows:

The foot is the tibia and fibula in their articulation with the talus, and all bones to the toes, inclusive of all soft tissues (muscles, nerves, vascular structures, tendons, ligaments and any other anatomical structures) that insert into the tibia and fibula in their articulation with the talus and all bones to the toes.

The tibia is "the shin bone" or "the inner and larger bone of the leg below the knee." *Dorland's Illustrated Medical Dictionary* 1911 (30th ed. 2003). The fibula is "the outer and smaller of the two bones of the leg." *Id.* at 698. The talus is "the highest of the tarsal bones and the one that articulates with the tibia and fibula to form the ankle joint" and is also called the ankle. *Id.* at 1853; *see also id.* at 1855 (explaining that tarsus is "the region of the articulation between the foot and the leg").

In response to concerns regarding the validity of the Rule, the attorney general issued an opinion stating that the Rule was invalid because it impermissibly expanded the practice of podiatry to the extent that it allowed podiatrists to treat the tibia and fibula. *See* Tex. Att'y Gen. Op. No. JC-441 (2001). The attorney general reasoned that the tibia and fibula are leg bones, not bones of the foot, and, therefore, outside the scope of podiatry. *See id.* Shortly after the attorney general opinion was released, the appellants filed a declaratory judgment action, asking the district court to determine the validity of the Rule. *See* Tex. Gov't Code Ann. § 2001.038 (West 2000) (allowing plaintiff to seek declaration regarding validity of rule); Tex. Civ. Prac. & Rem. Code Ann. § 37.001-.011 (West 1997 & Supp. 2007) (Uniform Declaratory Judgment Act). The Texas Podiatric Medical Association and Bruce A. Scudday (cumulatively "the Association") intervened.

The district court declared that the Rule was valid and did not exceed the Board's statutory authority. The appellants appeal the judgment of the district court.[1]

## STANDARD OF REVIEW

On appeal, the appellants argue that the Board's promulgation of the Rule exceeded its rule-making authority.[2] As an agency, the Board is a creation of the legislature and, therefore, "has no inherent authority." *See Public Util. Comm'n v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 316 (Tex. 2001). For this reason, the Board possesses only those powers "expressly conferred upon it."

---

[1] Before addressing the merits of the case, we will address a jurisdictional argument made by the Board. On appeal, the Board contends that the appellants did not have standing to seek the declarations regarding the propriety of the Rule. In a previous opinion, we addressed the issue of the appellants' standing. *See State Bd. of Podiatric Med. Examiners v. Texas Orthopaedic Ass'n*, No. 03-04-00253-CV, 2004 Tex. App. LEXIS 10031 (Tex. App.—Austin Nov. 12, 2004, no pet.). In that case, the Board filed a plea to the jurisdiction asserting that the appellants did not have standing to bring this suit, but we ultimately concluded that the appellants did have standing to contest the Rule. *Id.* at *11; *see also South Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307-08 (Tex. 2007) (providing general and associational standing requirements). In this appeal, the Board raises similar concerns regarding the appellants' standing. In particular, it contends that the appellants do not have standing because, during the trial, the appellants offered no evidence that would satisfy traditional standing requirements and because the appellants presented no evidence that subsection 2001.038(a) of the government code had been complied with.

We disagree with the Board. We previously concluded that the appellants had sufficiently demonstrated that they had standing to maintain this suit and that they complied with traditional standing and associational standing requirements, *see State Bd. of Podiatric Med. Examiners*, 2004 Tex. App. LEXIS 10031, and all the reasons articulated in our previous opinion again compel us to conclude that the appellants had standing to seek the declarations sought. The fact that the Board alleges that no additional evidence relating to standing was introduced at trial would not divest the district court of jurisdiction at the end of the trial.

[2] The appellants also ask us to issue a declaration that "the lawful practice of podiatry in Texas is confined to treatment of the foot." Given our resolution of this case, it is unnecessary and would be advisory for us to opine as to the entire scope of the practice of podiatry in Texas.

*See id.* However, when conferring a power upon an agency, the legislature also "impliedly intends that the agency have whatever powers are reasonably necessary to fulfill its express functions or duties," *see id.*, and the legislature is not required to include every specific detail or anticipate all unforeseen circumstances when enacting an agency's authorizing statute, *State v. Public Util. Comm'n*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, pet. denied).

An agency's construction of a statute that it is charged with enforcing is entitled "to serious consideration by reviewing courts, so long as that construction is reasonable and does not contradict the plain language of the statute." *Employees Ret. Sys. v. Jones*, 58 S.W.3d 148, 151 (Tex. App.—Austin 2001, no pet.). In other words, when determining whether an agency's rule is valid, we must ascertain whether the rule is contrary to the relevant governing statutes, *Public Util. Comm'n*, 131 S.W.3d at 321, or whether the rule is in harmony with the general objectives of the statutes involved, *see Liberty Mut. Ins. Co. v. Griesing*, 150 S.W.3d 640, 648 (Tex. App.—Austin 2004, pet. dism'd w.o.j.). If a promulgated rule has no supporting statutory authority, the rule is void. *Office of Pub. Util. Counsel. v. Public Util. Comm'n*, 104 S.W.3d 225, 232 (Tex. App.—Austin 2003, no pet.).

To properly perform this function, we must ascertain the legislature's intent in enacting the relevant governing statutes. *See Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 652 (Tex. 2004). Although the legislature has specified other tools to guide us when determining their intent, *see* Tex. Gov't Code Ann. § 311.023 (West 2005), our determination begins with the plain language of the statutes involved, *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002). *See Fireman's Fund County Mut. Ins. Co. v. Hidi*,

6

13 S.W.3d 767, 768-69 (Tex. 2000) (providing that to determine legislative intent, courts should look to plain meaning of words used in relevant statutory provisions). In performing our analysis, we review the entire statute, not isolated portions, *Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 398 (Tex. 2000), and we must presume that every word was deliberately chosen and that excluded words were left out purposely, *USA Waste Servs. of Houston, Inc. v. Strayhorn*, 150 S.W.3d 491, 494 (Tex. App.—Austin 2004, pet. denied). We should not adopt a construction of a statute that will render the statute meaningless or lead to absurd results. *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999); *Watts v. City of Houston*, 126 S.W.3d 97, 100 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

## DISCUSSION

On appeal, the appellants contend that the district court erred when it concluded that the Board's enactment of the Rule was a valid exercise of the agency's rule-making authority. On the contrary, appellants assert that the Rule impermissibly expands the practice of podiatry beyond the treatment of the foot.

In response, the Association contends that in making their claims, the appellants improperly focus on the phrase "foot" found in the statutory definition of podiatry rather than reading and giving meaning to every word found in the definition. *See* Tex. Occ. Code Ann. § 202.001(a)(4). In particular, the Association contends that the definition does not state that podiatrists may only treat the foot; on the contrary, it emphasizes that the provision allows podiatrists to treat the foot "by any system or method" and that "podiatry" includes everything constituting "podiatric medicine." *Id.* The Board makes similar arguments. In particular, it asserts that by including the term "podiatric

7

medicine" in its definition, the legislature incorporated into the definition of podiatry all of the procedures podiatrists were actually performing at the time the statute was enacted.

In support of this interpretation of the statutory structure, the Board introduced during trial evidence demonstrating that for several decades, podiatrists have been treating the ankle. For example, several podiatrists testified that they were trained to perform both surgical and nonsurgical procedures on the ankle during their residencies, and the Board presented evidence that various podiatry books written over the past 80 years have included sections on treating the ankle. In addition, several podiatrists testified that they have been granted privileges by various hospitals to perform ankle surgeries and that when they performed ankle procedures, they were reimbursed by insurance companies, Medicare, and Medicaid. Further, several podiatrists testified that the practice of podiatry has always included treatment of the ankle and that the Board's definition is consistent with that practice and did not increase or decrease the scope of the practice.

In addition, the Association contends that the Rule is consistent with the medical definition of the term "foot," which it asserts includes the ankle.[3] *See* Tex. Gov't Code Ann. § 311.011 (West 2005) (requiring courts to construe "[w]ords and phrases that have acquired a technical or particular meaning" in accordance with that meaning); *Lloyd Fry Roofing Co. v. State*, 541 S.W.2d 639, 642-43 (Tex. Civ. App.—Dallas 1976, writ ref'd n.r.e.) (explaining that when statutory term has technical meaning, court will look to particular art, science, or trade from which

---

[3] We note that some medical definitions of the "foot" exclude the ankle. *See, e.g.*, *Black's Medical Dictionary* 211 (39th ed. 1999) (defining foot as "that portion of the lower limb situated below the ankle joint"); *American Heritage Stedman's Medical Dictionary* 312 (2002) (defining foot as "The lower extremity of the vertebrate leg that is in direct contact with the ground in standing or walking").

it was taken to ascertain its meaning). Furthermore, the Association argues that by promulgating the Rule, the Board was following the statutory directive to utilize its expertise and promulgate reasonable and necessary rules to govern the practice of podiatry. *See* Tex. Occ. Code Ann. § 202.151(2). In addition, it insists that an interpretation limiting the scope of practice of podiatry to the area below the ankle bones and joint would lead to absurd results, including prohibiting podiatrists from treating a sprained ankle.

We disagree with the Board and the Association. All of their arguments are couched on the premise that the Rule merely authorizes podiatrists to treat the foot and the ankle and that the Rule is, therefore, consistent with the scope of podiatric medicine. However, there is no language in the Rule limiting the foot to that portion of the body that is at or below the ankle. On the contrary, the terms of the Rule authorize podiatrists to treat parts of the body that are well above the ankle.

The Rule states that the "foot" includes "all soft tissues (muscles, nerves, vascular structures, tendons, ligaments and any other anatomical structures) that insert into the tibia and fibula in their articulation with the talus." 22 Tex. Admin. Code § 375.1(2). However, many of the soft tissues included in this definition are not part of the foot or even the ankle. For example, various nerves ending in the foot—including the tibial nerve, the peroneal nerve, and the sural nerve—run along significant portions of the leg before reaching a termination point in the foot. *See* Frank H. Netter, N.D., *Atlas of Human Anatomy* 482, 483, 485, 504 (2nd ed. 1997). Similarly, several veins and arteries—including the saphenous vein and the tibial artery and vein—also end in the foot after having traversed significant portions of the leg. *Id.* at 477, 482, 483, 508. In fact, one of the nerves and one of the veins previously mentioned run along the entire length of the leg.

Because there is no language limiting the permissible area of treatment for these soft tissues, the Rule authorizes podiatrists to treat these anatomical features wherever they may be located in the body and to treat "any disease, disorder, physical injury, deformity, or ailment" of these features because they have been defined as being part of the foot. *See* Tex. Occ. Code Ann. § 202.001(a)(4). Moreover, because the occupations code allows podiatrists to treat the foot "by any system or method," the Rule effectively authorizes podiatrists to treat these body parts by utilizing procedures that are outside the scope of their training.[4] *See id.* § 202.001(a)(4); *see also id.* § 202.254 (specifying that to obtain license to practice podiatry, applicant must pass examination covering ailments of the *foot*) (emphasis added). As a result, the Rule authorizes podiatrists to treat parts of the body outside the traditional scope of podiatry without satisfying the requirements of the Medical Practice Act. *See id.* §§ 155.001-.152 (detailing requirements for obtaining license to practice medicine). This authorization exceeds the limited exemption given to podiatrists and would constitute the unauthorized practice of medicine. *See id.* §§ 151.052(a)(5), 155.001.[5]

---

[4] Although there was extensive testimony and evidence presented during trial showing that treating the ankle was within the scope of podiatry, no evidence was introduced showing that treating parts of the body found within the leg were within the scope of podiatry.

[5] It is worth noting that although on one hand the Rule impermissibly expands the practice of podiatry, the Rule also seems to truncate the scope as well. The Rule defines the foot as including certain bones and the soft tissues "that insert into the tibia and fibula in their articulation with the talus and all bones to the toes." 22 Tex. Admin. Code § 375.1(2) (2007). This definition seems to exclude soft tissues that are found exclusively within the foot and, consequently, that are not part of the articulation between the talus and the tibia and fibula.

For all these reasons, we conclude that the Rule is not in harmony with the general objectives of the various statutes involved and that the Board exceeded its authority by promulgating the Rule.[6]

As an alternative basis to support the district court's judgment, the Association contends that the judgment should be affirmed because the appellants "failed to meet their burden of proof" regarding the Rule's alleged invalidity. In making this assertion, it notes that agency rules are presumed to be valid and that the challenging party has the burden of proving that the rule is invalid. *TXU Generation Co. v. Public Util. Comm'n*, 165 S.W.3d 821, 829 (Tex. App.—Austin 2005, no pet.). In light of this proposition, the Association contends that the appellants failed to meet this burden because they failed to dispute the basis for the Rule set out in the Board's reasoned

---

[6] On appeal, the Association also argues that because the appellants stated in their brief that they are not contesting "the reasonableness of the Board's Rule," the appellants have essentially conceded that they lose their appeal. In making this argument, the Association relies on *Bullock v. Hewlett-Packard Co.*, 628 S.W.2d 754, 756 (Tex. 1982). That case involved a determination of the validity of a franchise tax rule. *Id.* at 756. In its analysis, the supreme court stated that "[c]ourts must uphold 'legislative' administrative rules if they are reasonable. . . . Such rules need only be based on some legitimate position by the administrative agency involved." These statements were not paired with the usual qualifiers that the rule must not contradict the plain language of the statutes that the rule interprets or that the rule must be in harmony with the relevant statutory objectives. *Compare id.*, *with Employees Ret. Sys. v. Jones*, 58 S.W.3d 148, 151 (Tex. App.—Austin 2001, no pet.), *and Liberty Mut. Ins. Co. v. Griesing*, 150 S.W.3d 640, 648 (Tex. App.—Austin 2004, pet. dism'd w.o.j.). In light of this absence, the Association contends that the appellants' statement is an admission that the Rule is reasonable, and therefore, the analysis is concluded.

We disagree with the Association's assertion and believe that its reliance on *Bullock* is misplaced. Although the supreme court did not state explicitly that a rule must not be contrary to the relevant governing statutes, the court performed a detailed analysis of why the rule was "not inconsistent" with relevant statutory provisions. *Bullock*, 628 S.W.2d at 756-58. Moreover, when the appellants wrote the statement at issue in this case, they were simply stating that the legislature has the ultimate authority for determining whether podiatrists may medically treat parts of the body other than the foot and not conceding that the Rule was, in fact, reasonable.

11

justification. *See* Tex. Gov't Code Ann. §§ 2001.033 (West 2000) (mandating that agency order adopting rule must contain "a reasoned justification for the rule as adopted"), .035(b) (detailing two-year deadline for attacking rule); *see also id.* § 2001.035(a) (West 2000) (stating that agency rule is voidable if agency adopts rule without substantially complying with various statutory requirements including need for reasoned justification). Stated differently, the Association argues that by detailing a reasoned justification for a rule, an agency establishes a presumption that the rule is valid and in harmony with the relevant statutory requirements and that a party dissatisfied with the rule has the burden of attacking the justification and rebutting the presumption within two years of the rule's promulgation. Further, the Association contends that the presumption of validity extends to the factual basis found in an agency's reasoned justification and that this presumption must be rebutted for any challenge to a rule to be successful. Moreover, it argues that the validity of the reasoned justification may only be overcome if the challenging party shows and convinces a court that the justification is "illogical, arbitrary or demonstrates an improper interpretation of the scope of [the agency's] statutory authority."

We disagree with these contentions. It is true that the government code does specify certain requirements that an agency must comply with when promulgating a rule, including the requirement that an order contain a reasoned justification for the rule. *See* Tex. Gov't Code Ann. §§ 2001.023-.034 (West 2000). It is also true that the government code allows a person to contest a rule on the ground that the agency promulgating the rule did not comply with those procedural requirements. *Id.* § 2001.035.

However, the government code also authorizes a party to contest either the validity or applicability of a rule by filing a declaratory judgment action. *Id.* § 2001.038. This provision allows a party to contest the rule if the party alleges that the rule "impairs, or threatens to interfere with or impair, a legal right or privilege" of the party. *Id.* The provision imposes no requirement that a party must contest the factual basis of an agency's reasoned justification as a condition to disputing the validity of the rule, and we see no reason to impose this type of requirement on our own. Although consideration of the reasoned justification may be relevant in certain declaratory actions, a determination of whether the factual basis supporting the justification is proper will not necessarily address whether the agency's rule is consistent with relevant statutory language or whether the agency had the authority to issue the rule.

Finally, the Board and the Association contend that the legislature has ratified or adopted the Board's definition of the term foot through subsequent actions. First, the Board and the Association contend that the legislature has adopted the Board's definition and that, therefore, the Rule is consistent with the occupations code. The doctrine of legislative acceptance provides that if "an ambiguous statute that has been . . . given a longstanding construction by a proper administrative officer is re-enacted without substantial change, the Legislature is presumed to have been familiar with that interpretation and to have adopted it." *Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176 (Tex. 2004). In making their claim that the legislative acceptance doctrine applies, the Board and the Association note that although two different amendments to the relevant provisions of the occupations code were proposed

13

in the legislature, neither of these proposals left the committee, and therefore, the legislature has acquiesced to the Board's interpretation.

Second, although acknowledging that their argument differs from a typical ratification argument, the Board notes that after the Rule was promulgated and after appellants first expressed dissatisfaction with the Rule, the legislature continued to compensate podiatrists through Medicaid payments for procedures performed on the ankle.

We disagree. First, we do not believe that the legislative acceptance doctrine applies under the circumstances of this case. The legislature did not reenact section 202.001 after the Rule was promulgated—a prerequisite to proper utilization of the doctrine. Moreover, what little evidence there is regarding the legislature's belief about the scope of podiatry undermines the Board and the Association's suggestion that the legislature has adopted the construction found in the Rule or that the limits of the scope are well settled. After the Rule was promulgated, two contradictory amendments to the statutory definition of podiatry were proposed. The first proposed amendment was made in 2003 and was directly contrary to the Rule because it would have limited the term "foot" to the part of the body found below the ankle. Tex. S.B. 1395, 78th Leg., R.S. (2003). However, the second proposal, which was made in 2005, would have included treatment of the ankle within the definition of podiatry. Tex. S.B. 460, 79th Leg., R.S. (2005). Furthermore, the legislative acceptance doctrine cannot be utilized as support for the construction of a statute that is contrary to the language of the governing statutes, *see Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 282 (Tex. 1999), and we have already concluded that the Rule is inconsistent with the occupations

14

code in that it allows podiatrists to perform treatment outside their scope of practice—it allows podiatrists to treat areas of the body other than the foot.[7]

Second, whether the legislature continued to compensate podiatrists through the Medicaid program for treatments performed on the ankle after the Rule was promulgated seems to have no bearing on our ultimate conclusion. As discussed previously, the Rule authorizes treatment of body parts that are above the ankle.

For all the reasons given, we conclude that the Board exceeded its authority when it promulgated the Rule and that the Rule is invalid. Therefore, we sustain the appellants' issue on appeal.

## CONCLUSION

Having sustained appellants' sole issue on appeal, we reverse the judgment of the district court and render judgment that the Rule is invalid.

_____

David Puryear, Justice

Before Justices B. A. Smith, Puryear and Waldrop;
    Justice B. A. Smith Not Participating

Reversed and Rendered on Motion for Rehearing

Filed: May 23, 2008

_____

[7] The statutory authority currently in place limits podiatrists to the treatment of "the foot." While it may be difficult to define that term for purposes of treatment, whatever the term means, it is clear that "the foot" does not include the full portion of the body included within the definition in the Rule. Compelling arguments might be made as to whether—from a medical standpoint—it is reasonable to allow a practitioner treating the foot to consider and treat other anatomical systems that interact with and affect the foot. This is a debate to be had at the legislature.