TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00058-CV






Texas Board of Chiropractic Examiners and Glenn Parker, Executive Director, Appellants


v.


Texas Medical Association and Texas Medical Board, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT

NO. D-1-GN-06-003451, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING





O P I N I O N


 The Texas Board of Chiropractic Examiners and Glenn Parker, its executive director,
(collectively, the "Chiropractic Board") appeal from a district court order denying their plea to the
jurisdiction in a suit brought by the Texas Medical Association (TMA) and the Texas Medical Board
("Medical Board"). (1) For the reasons explained below, we will affirm the district court's order.

 Against the backdrop of the longstanding scope-of-practice disputes involving
chiropractors, physicians, and other health care providers, (2) the Seventy-Ninth Texas Legislature,
in its 2005 Sunset Bill for the Texas Board of Chiropractic Examiners, amended chapter 201 of
the occupations code to expressly exclude from the scope of practice of chiropractic
"surgical procedures" defined as procedures "described in the surgery section of the common
procedure coding system as adopted by the Centers for Medicare and Medicaid Services of the
United States Department of Health and Human Services." Act of May 27, 2005, 79th Leg., R.S.,
ch. 1020, § 1, sec. 201.002(a), 2005 Tex. Gen. Laws 3464, 3465 (current version at Tex. Occ. Code
Ann. § 201.002(a)(4) (West Supp. 2007)) (adding definition of "surgical procedures"); see
Tex. Occ. Code Ann. § 201.002(c)(1) (West Supp. 2007) (preexisting exclusion of "incisive or
surgical procedures" from the scope of chiropractic practice). In the same bill, the legislature also
mandated that the Chiropractic Board:


. . . shall adopt rules clarifying what activities are included within the scope of
practice of chiropractic and what activities are outside of that scope. The rules:


(1) must clearly specify the procedures that chiropractors may perform;


(2) must clearly specify any equipment and the use of that equipment that is
prohibited; and


(3) may require a license holder to obtain additional training or certification to
perform certain procedures or use certain equipment.




Act of May 27, 2005, 79th Leg., R.S., ch. 1020, § 8, sec. 201.1525, 2005 Tex. Gen. Laws
3464, 3466 (current version at Tex. Occ. Code Ann. § 201.1525 (West Supp. 2007)). 
When formulating these rules, the legislature also required that the Chiropractic Board
"establish methods under which [it], to the extent appropriate, will seek input early in the rule
development process from the public and from persons who will be most affected" by the
proposed rule through methods that "must include identifying persons who will be most
affected and soliciting, at a minimum, the advice and opinions of those persons," and "may
include negotiated rulemaking, informal conferences, advisory committees, and any other
appropriate method." Act of May 27, 2005, 79th Leg., R.S., ch. 1020, § 8, sec. 201.1526,
2005 Tex. Gen. Laws 3464, 3466 (current version at Tex. Occ. Code Ann. § 201.1526
(West Supp. 2007)).

 Sections 201.1525 and 201.1526 implemented Sunset Advisory Commission
recommendations aimed at requiring "the Board to cease its practice of issuing Board opinions"
to address scope-of-practice issues (3) and instead "follow the State's rulemaking process" so as
to "clearly define the practices and technology that chiropractors can and cannot use to
treat patients by rule, using the input of stakeholders early in the rulemaking process."
Sunset Advisory Commission, Sunset Commission Decisions: Texas Board of Chiropractic
Examiners (May 2004), at 3. As the Sunset Commission observed, one implication of this
requirement was that the Chiropractic Board would effectively be "require[d] to submit all of its
previous opinions to this rulemaking process." Id.

 The legislature gave the Chiropractic Board until January 1, 2006, to adopt the
rules required under section 201.1525. Act of May 27, 2005, 79th Leg., R.S., ch. 1020, § 38,
2005 Tex. Gen. Laws 3464, 3474. The Chiropractic Board published a proposed scope-of-practice
rule in the Texas Register for public comment on December 16, 2005. 30 Tex. Reg. 8383 (2005). 
It ultimately adopted a final rule, which was published in the Texas Register on June 2, 2006. 
31 Tex. Reg. 4613 (2006) (codified at 22 Tex. Admin. Code § 75.17 (2008)). The rule addressed
a number of procedures that had generated controversy. At issue in this appeal is the
Chiropractic Board's action in regard to one of those procedures, manipulation under anesthesia, or
"MUA." In the preamble to its rule, the Chiropractic Board stated:


Manipulation under anethesia (MUA) has been part of the practice of chiropractic in
Texas for more than 25 years. The Board has not received any complaints regarding
the practice of MUA and the principal malpractice insurance carrier for chiropractors
in Texas has likewise not received any claims. However, MUA is listed under the
surgical codes of the CPT Codebook. Consequently, the Board is still reviewing
several issues regarding MUA amd whether it is within the scope of practice of
chiropractic in Texas as described under the Chiropractic Act. In the absence of any
evidence of a risk to the public health, the Board has elected to not disturb the
status quo until it has reached a final conclusion on whether MUA remains within the
scope of practice in Texas.


31 Tex. Reg. at 4615. As noted above, the legislature in the 2005 amendments had expressly
excluded from the scope of practice of chiropractic procedures described in the surgery section of
the CPT Codebook. See Tex. Occ. Code Ann. § 201.002(a)(4). According to its statement regarding
MUA in the preamble, the Chiropractic Board was electing to "not disturb the status quo" with its
rules, which was--as the statement had previously recited--that chiropractors perform MUA. The
new rule did not expressly address MUA nor did it prohibit the practice. The only guidance that the
Board gave on the subject was to express the view in the preamble to the rule that it was not
disturbing the "status quo."

 The TMA filed suit challenging several provisions of the Chiropractic Board's
scope-of-practice rule. With respect to MUA, the TMA alleged that the rule, by purporting to
maintain a "status quo" in which chiropractors were being permitted to perform MUA,
conflicted with the legislature's rulemaking mandate in section 201.1525 and chapter 201's
explicit exclusion of "surgical procedures," as now defined in the 2005 amendments, from the
scope of chiropractic practice. Id. §§ 201.1525, .002(a)(4), .002(c)(1). (4) The TMA requested a
declaration under the Uniform Declaratory Judgments Act that the scope-of-practice rule conflicted
with these statutory mandates. See Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008). 
TMA also sought a declaration under section 2001.038 of the government code that its order
adopting the rule and preamble failed to provide an adequately reasoned justification because it
"fails to explain why the Board's failure to include [MUA] as outside the scope of practice of
chiropractic" does not violate statutory mandates. See Tex. Gov't Code Ann. § 2001.038
(West 2000). TMA also asserted an alternative constitutional challenge regarding chapter
201's scope-of-practice limitations, as well as a claim for injunctive relief against
implementation of the rule.

 TMA joined the Medical Board in the suit. The Chiropractic Board filed a plea to
the jurisdiction contending that the TMA lacked standing and that "the issues relating to
manipulation under anesthesia" were not ripe. In support, it attached a copy of its final rule. The
district court denied the plea, and the Chiropractic Board thereafter appealed this order.

 The Chiropractic Board brings a single issue contending that appellees' claims
relating to MUA are not ripe for adjudication because the board "has not made a final decision on
this issue." It emphasizes the statement in the rule's preamble that "the Board is still reviewing
several issues regarding MUA and whether it is within the scope of practice of chiropractic in
Texas." Unless and until it "promulgates a rule that finally concludes whether MUA is or is not
within the scope of practice," according to the Chiropractic Board, "[j]udicial review of the
Appellee's allegations relating to MUA will not be ripe," as they are "hypothetical" and "contingent"
upon the further action of the board. These assertions are without merit.

 "Ripeness, like standing, is a threshold issue that implicates subject matter
jurisdiction." Patterson v. Planned Parenthood, 971 S.W.2d 439, 442 (Tex. 1998). Ripeness
concerns whether, at the time a lawsuit is filed, the facts have developed sufficiently such
"that an injury has occurred or is likely to occur, rather than being contingent or remote." Id. A case
is not ripe when its resolution depends upon contingent or hypothetical facts, or upon events that
have not yet come to pass. Waco Indep. Sch. Dist. v. Gibson, 22 S.W.3d 849, 852 (Tex. 2000).

 Like other justiciability doctrines, ripeness derives from the constitutional prohibition
against advisory opinions, which in turn stems from separation-of-powers principles. Patterson,
971 S.W.2d at 442. The ripeness doctrine also has a "pragmatic, prudential aspect" that aims to
conserve "'judicial time and resources for real and current controversies, rather than abstract,
hypothetical, or remote disputes.'" Id. at 443 (quoting Mayhew v. Town of Sunnyvale, 964 S.W.2d
922, 928 (Tex. 1998)). Moreover, in the administrative law context, avoiding premature
litigation over administrative determinations "prevents courts from 'entangling themselves
in abstract disagreements over administrative policies' while at the same time serving to 'protect
the agencies from judicial interference until an administrative decision has been formalized and
its effects felt in a concrete way by the challenging parties.'" Id. (quoting City of El Paso
v. Madero Dev. & Constr. Co., 803 S.W.2d 396, 389-99 (Tex. App.--El Paso 1991, writ denied)).

 However, there is nothing "hypothetical" or "abstract" about the appellees' claims. 
As all parties acknowledge, the Chiropractic Board actually promulgated a final scope-of-practice
rule ostensibly in compliance with the legislature's mandates in its 2005 Sunset Bill. Appellees pled
that chiropractors have been engaging in MUA, and the Chiropractic Board does not dispute this
fact. (5) In fact, the board acknowledged in the rule's preamble that Texas chiropractors had been
conducting MUA for years. In this factual context, the Chiropractic Board expressly "elected not
to disturb" this "status quo" in its rule, thereby allowing the practice to continue despite questions
regarding its legality. Appellees have alleged that this action violates the legislative mandates in
section 201.1525 and the statutory limits on the scope of practice, thereby intruding upon the practice
of medicine and causing them injury. (6) Appellees further alleged that the Chiropractic Board failed
to provide a reasoned justification for crafting its rule in this manner. If there is anything
hypothetical or contingent about this dispute--given the history that prompted the legislature's 2005
measures--it is the possibility that the Chiropractic Board will reach a "final conclusion" regarding
MUA in its rule or, in contrast to its current approach, actually prohibit the practice.

 We further note the longstanding principle that "[a]n administrative body cannot,
by reserving for itself the power to change a ruling, deprive the courts of jurisdiction to the
detriment of the parties injured by the ruling." Glen Oaks Utils., Inc. v. City of Houston, 340 S.W.2d
783, 786 (Tex. 1960). As appellees suggest, the Chiropractic Board's position is essentially that
"so long as it says that it is still studying the issue, no party or court has the authority to challenge
what it has done." We reject that view.

 The Chiropractic Board also urges that the legislature vested in it
"exclusive jurisdiction" to define the scope of practice of chiropractic. It acknowledges, however,
that it "does not contend that it has authority or jurisdiction to decide the Appellees' claims." 
See Subaru of Am., Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 221 (Tex. 2002)
(explaining that exclusive jurisdiction exists when the legislature has delegated to an agency the sole
power to make an initial determination in a dispute). Instead, it "claims only the authority and
jurisdiction to make a decision on chiropractic MUA before the Appellees may challenge the validity
of the decision under the Administrative Procedures Act." This assertion is ultimately a restatement
of the Chiropractic Board's flawed ripeness arguments.

 We overrule the Chiropractic Board's issue and affirm the district court's order
denying its plea to the jurisdiction. We intend no opinion regarding the ultimate merits of
appellees' claims.



 ____________________________________________

 Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: August 15, 2008

1. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008).
2. See, e.g., O'Neal v. Texas Bd. of Chiropractic Exam'rs, No. 03-03-00270-CV,
2004 Tex. App. LEXIS 8254, at *2-10 (Tex. App.--Austin Sept. 10, 2004, no pet.)
(mem. op.) (regarding whether needle electromyography--"needle EMG"--is within the scope of
practice of chiropractic); Continental Cas. Co. v. Texas Bd. of Chiropractic Exam'rs,
No. 03-00-00513-CV, 2001 Tex. App. LEXIS 2336, at *1-8 (Tex. App.--Austin Apr. 12, 2001,
no pet.) (not designated for publication) (regarding whether needle EMG and manipulation
under anesthesia (MUA) are within scope of practice of chiropractic); Op. Tex. Att'y Gen.
No. JC-0379 (2001) (whether "spinal manipulation" is within scope of practice of acupuncture);
Op. Tex. Att'y. Gen. No. DM-472 (1998) (whether use of injectable substances is within scope of
practice of chiropractic); Op. Tex. Att'y Gen. No. DM-415 (1996) (whether acupuncture was within
scope of practice of chiropractic). See also Texas Mut. Ins. Co. v. Stelzer, No. 03-06-00675-CV
(Tex. App.--Austin, notice of appeal filed Nov. 2, 2006), which presents issues regarding whether
needle EMG is within the scope of practice of chiropractic.
3. See O'Neal, 2004 Tex. App. LEXIS 8254, at *2 (noting Chiropractic Board's practice of
issuing "statements" or "memoranda" rather than rules to address issues regarding scope of practice
for chiropractors).
4. The TMA also alleged that the rule conflicted with section 201.154 of the Act, which
provides, "Notwithstanding any other provision of this chapter, the board may not adopt a
process to certify chiropractors to perform manipulation under anesthesia." Tex. Occ. Code Ann.
§ 201.154 (West 2004).
5. See Texas Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004)
(unless a pled jurisdictional fact is challenged and conclusively negated, it must be taken as true for
purposes of determining subject-matter jurisdiction).
6. See Texas Orthopaedic Assoc. v. Texas State Bd. of Podiatric Med. Exam'rs, 254 S.W.3d
714, 718 n.1(Tex. App.--Austin 2008, no pet. h.) (op. on reh'g) (citing with approval Texas State
Bd. of Podiatric Med. Exam'rs v. Texas Orthopaedic Assoc., 2004 Tex. App. LEXIS 10031, at *9-10
(Tex. App.--Austin 2004, no pet.) (recognizing that physicians and TMA had standing to complain
of podiatrist board's rule that allegedly infringed on practice of medicine)).