TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00273-CV






Appellants, Texas Bankers Association, Finance Commission of Texas, and Credit Union
Commission of Texas // Cross-Appellants, Association of Community Organizations for
Reform Now (ACORN), Valerie Norwood, Elsie Shows, MaryAnn Robles-Valdez,
Bobby Martin, Pamela Cooper, and Carlos Rivas


v.


Appellees, Association of Community Organizations for Reform Now (ACORN), Valerie
Norwood, Elsie Shows, MaryAnn Robles-Valdez, Bobby Martin, Pamela Cooper, and
Carlos Rivas // Cross-Appellees, Texas Bankers Association, Finance Commission of Texas,
and Credit Union Commission of Texas






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT

NO. D-1-GN-04-000269, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING





C O N C U R R I N G A N D D I S S E N T I N G O P I N I O N


 For the reasons that follow, I respectfully dissent from the majority's resolution of
the first issue on appeal. I join the result reached by the majority in the other issues because I agree
that the rules promulgated by the Finance Commission of Texas and the Credit Union Commission
of Texas (collectively, the "Commissions") should be upheld. However, I do not agree with the
analysis employed by the majority in these issues because in resolving all of the issues on appeal,
the majority reviews the rules promulgated by the Commissions in the same manner that this Court
typically treats rules promulgated by administrative agencies. The majority's election to review the
rules using traditional canons of construction ignores the unique grant of authority bestowed upon
the Commissions by the constitution and by the legislature. It also fails to address what the
judiciary's role is, if any, regarding the review of the Commissions' rules in light of the sweeping
authorization given to those agencies. 

 The rules at issue in this appeal originate from a series of constitutional amendments. 
As mentioned in the majority opinion, in 1997 the citizens of Texas passed an amendment to the
Homestead Provision of the constitution that allows bankers in Texas to issue home-equity loans
provided that certain criteria are met. See Tex. Const. art. XVI, § 50. The condition at issue in this
case limits the fees that a homeowner may be charged for obtaining the loan. Specifically, the
provision states that a bank may: 


not require the owner or the owner's spouse to pay, in addition to any interest, fees
to any person that are necessary to originate, evaluate, maintain, record, insure, or
service the extension of credit that exceed, in the aggregate, three percent of the
original principal amount of the extension of credit.



Tex. Const. art. XVI, § 50(a)(6)(E) (emphasis added). The voters also passed a second amendment
allowing the legislature to empower one or more state agencies to interpret the home-equity-loan
amendment to the Homestead Provision. Id. § 50(u). (1) In light of this constitutional authorization,
the legislature enacted laws empowering the Commissions to issue "interpretations" of the home-equity-loan amendment. Tex. Fin. Code Ann. §§ 11.308 (pertaining to finance commission), 15.413
(West Supp. 2009) (empowering credit union commission); see also Nootsie, Ltd. v. Williamson
County Appraisal Dist., 925 S.W.2d 659, 661 (Tex. 1996) (stating that courts "must liberally
construe any constitutional provision that directs the Legislature to act for a particular purpose"). 

 After the legislature passed the provisions allowing the Commissions to interpret the
home-equity-loan amendment, the Commissions adopted rules governing home-equity lending. See
7 Tex. Admin. Code §§ 153.1-.96 (2009). Among other things, the rules clarify what the term
"interest" in the amendment means. Those rules form the subject of this appeal. 

 The fact that the rules were promulgated in response to a delegation of authority to
administrative agencies by the constitution is significant and unprecedented. Typically, agencies are
empowered by the legislature, not by the constitution. Moreover, the delegation at issue specified
that the Commissions have the authority to "interpret" the home-equity-loan amendment. See Tex.
Const. art. XVI, § 50(u); see also id. art. II, § 1 (explaining that one branch of government may
exercise powers typically reserved for one of remaining branches when expressly authorized by
constitution). In light of this unique delegation, it is not entirely clear that this Court has any
authority to review or invalidate the rules at issue in this case. Cf. State v. Thomas, 766 S.W.2d 217,
219 (Tex. 1989) (explaining that legislature cannot "by statute abrogate the Attorney General's
constitutional grant of power" and that constitutional balance of powers may only be altered "by
constitutional amendment"). Assuming that such authority exists, our ability to review the
Commissions' rules regarding the home-equity-loan amendment would have to be more limited than
the review that we typically use regarding agency rules and that was used by the majority in this case. 


 In its opinion, the majority concludes that the rules identified in all but the first issue
should be upheld. Because I believe that a more deferential standard should have been applied, I
would also conclude that the rules should be upheld. Accordingly, I join the result reached by the
majority in its resolution of these issues. 

 Under that more deferential standard, I would also conclude that the rules addressed
in the first issue survive appellate scrutiny. However, even assuming that the typical and less
deferential standard applies, I would still conclude that the rules discussed in that issue should be
upheld. The traditional guidelines instruct us that an agency's construction of a governing law that
it is charged with enforcing is entitled "to serious consideration by reviewing courts, so long as the
construction is reasonable and does not contradict" the law's plain language. Employees Ret. Sys.
v. Jones, 58 S.W.3d 148, 151 (Tex. App.--Austin 2001, no pet.). In other words, when determining
whether a rule is valid, courts must determine whether the rule is in harmony with or contrary to the
relevant governing scheme. Texas Orthopaedic Ass'n v. Texas State Bd. of Podiatric Med. Exam'rs,
254 S.W.3d 714, 719 (Tex. App.--Austin 2008, pet. abated) (op. on reh'g). If the rule has "no
supporting statutory authority, the rule is void." Id. 

 Before delving into the merits of this issue, a brief discussion of the context in which
the rules were promulgated is necessary. The home-equity-loan amendment is not the only
constitutional provision implicated by this case. Another provision empowers the legislature to
define "interest." Tex. Const. art. XVI, § 11 (stating that "Legislature shall have the authority to
define interest and fix maximum rates of interest"). In light of this broad authority, the legislature
defined interest in the financial code. Tex. Fin. Code Ann. § 301.002(a)(4) (West 2006). That
definition provides as follows:


"Interest" means compensation for the use, forbearance, or detention of money. The
term does not include time price differential, regardless of how it is denominated.
The term does not include compensation or other amounts that are determined or
stated by this code or other applicable law not to constitute interest or that are
permitted to be contracted for, charged, or received in addition to interest in
connection with an extension of credit.



Id. § 301.002(a)(4) (West 2006). When they promulgated their rules interpreting the home-equity-loan amendment, the Commissions adopted the definition of "interest" found within the financial
code, 7 Tex. Admin. Code § 153.1(11), and explained that interest charges "are not fees subject to
the three percent limitation" found in the home-equity-loan amendment, id. § 153.5(3). 

 The majority supports its determination that the definition chosen by the
Commissions is invalid by asserting that the definition adopted by the Commissions is pulled from
the financial code provisions governing usury. See Tex. Fin. Code Ann. §§ 302.001-.002
(West 2006) (constituting subchapter entitled "Usurious Interest"). The majority reasons that the
usury provisions require a broad definition for interest because they are consumer oriented whereas
the fee cap in the home-equity-loan amendment must be given a more limited definition in order to
comply with the legislative intent of protecting homeowners. 

 However, the legislative definition for "interest" is not found within the usury
provisions and is instead listed in the "GENERAL PROVISIONS" of the financial code containing
the definitions for terms that are to be used in the subtitle governing the use of interest. See id.
§§ 301.001-.002 (West 2006) (containing general provisions); see also id. §§ 301.001-339.005
(West 2006 & Supp. 2009) (encompassing "INTEREST" subtitle of title 4 of finance code; title 4
is entitled "REGULATION OF INTEREST, LOANS, AND FINANCED TRANSACTIONS"). 
Although that definition is used in the usury provisions of the "Interest Rates" chapter, see id.
§ 302.001-.002, (West 2006), it is also used in the provisions of the subtitle not specifically
addressing usury, see generally id. §§ 302.102-339.005 (addressing, among other things, rate
ceilings, judgment interest, and commercial loans). This definition is also directly incorporated into
another subtitle of the financial code governing loans and financial transactions and containing
provisions that do not pertain to usury. See id. § 341.001(8) (West 2006); see also id. §§ 341.001-350.004 (West 2006 & Supp. 2009) (comprising subtitle B of title 4).

 These non-usurious provisions would not seem to have the same consumer-oriented
concerns that the majority relies on in asserting that the Commissions' definition is improper.
Because the legislature chose to use the same definition for interest in the usury and in the non-usury
portions of the financial code, we must presume that the legislature weighed any potential conflicts
between these types of statutes and crafted a definition for interest that reconciled those conflicts. 

 In addition, when determining the validity of a law, we must presume that the
legislature enacted the statute "with complete knowledge of existing law and with reference to it." 
In re Garcia, 944 S.W.2d 725, 727 (Tex. App.--Amarillo 1997, no writ). Although that canon of
construction is typically employed when construing statutes, it would also seem to apply to
constitutional provisions proposed by the legislature. In this case, the legislature proposed a
constitutional amendment allowing an agency to interpret the home-equity-loan amendment after the
legislature had already codified a definition for interest. Moreover, after the Commissions' rule
became effective in 2004, see 7 Tex. Admin. Code § 153.1, the legislature revised its definition of
"interest" by adding the last sentence found in the current definition, (2) see Act of May 29, 2005,
79th Leg., R.S., ch. 1018, § 2.01, 2005 Tex. Gen. Laws 3438, 3439-40. In light of the prior
promulgation of the rule, the fact that the legislature chose not to exclude its definition for interest
from the home-equity-loan context is some indication that the legislature intended for its definition
to apply. See Bullock v. Marathon Oil Co., 798 S.W.2d 353, 357 (Tex. App.--Austin 1990, no writ)
(explaining that "if an agency interpretation is in effect at the time the legislature amends the law
without making any substantial change in the statute, the legislature is deemed to have accepted the
agency's interpretation"). 

 Furthermore, because the Commissions chose to adopt the definition for interest that
was codified by the legislature, the Commissions' rules are consistent with the statutory definition
of "interest" and, accordingly, clearly have statutory support. See 7 Tex. Admin. Code § 153.1(11). 
It is hard to imagine a more reasonable manner in which the Commissions could have attempted to
give effect to the legislature's intent than using the very definition adopted by the legislature. This
seems particularly true where, as here, the legislature's definition was also made in response to a
constitutional directive. 

 In light of the preceding, I would conclude that the Commissions' rule is reasonable,
does not contradict the amendment's plain language, and is in harmony with the relevant governing
scheme. Accordingly, I would reverse the portion of the trial court's ruling invalidating the
Commissions' rules adopting and using the definition of interest found in the financial code. (3) 
Although I personally might not endorse a definition for interest that could lead to homeowners
being charged higher fees in connection with home-equity loans, this Court does not have the
authority to countermand the actions of the legislature or the will of the people expressed by the
passage of a constitutional amendment empowering the Commissions to act in the manner that
they did. 

 For the reasons previously given, I dissent from the majority's resolution of the first
issue but concur with the result reached by the majority in all of the remaining issues on appeal. 


 

 David Puryear, Justice

Before Justices Patterson, Puryear, and Henson 

Filed: January 8, 2010
1. Subsection 50(u) provides as follows: 


The legislature may by statute delegate one or more state agencies the power to
interpret Subsections (a)(5)-(a)(7), (e)-(p), and (t), of this section. An act or
omission does not violate a provision included in those subsections if the act or
omission conforms to an interpretation of the provision that is:


(1) in effect at the time of the act or omission; and


(2) made by a state agency to which the power of interpretation is
delegated as provided by this subsection or by an appellate court of
this state or the United States.



Tex. Const. art. XVI, § 50(u). 
2. The last sentence reads as follows: "The term does not include compensation or other
amounts that are determined or stated by this code or other applicable law not to constitute interest
or that are permitted to be contracted for, charged, or received in addition to interest in connection
with an extension of credit." Tex. Fin. Code Ann. § 301.002(a)(4) (West 2006). 
3. In its judgment, the district court invalidated the rule containing the definition of interest
and various rules using that definition. See 7 Tex. Admin. Code §§ 153.1(11), 153.5(3), (4), (6), (8),
(9), (12) (2009). The same reasons compelling my determination that the district court erred by
invalidating the rule defining interest would also compel me to conclude that the district court erred
by invalidating the rules using that definition.