# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00273-CV

**Appellants, Texas Bankers Association, Finance Commission of Texas, and Credit Union Commission of Texas // Cross-Appellants, Association of Community Organizations for Reform Now (ACORN), Valerie Norwood, Elsie Shows, MaryAnn Robles-Valdez, Bobby Martin, Pamela Cooper, and Carlos Rivas**

**v.**

**Appellees, Association of Community Organizations for Reform Now (ACORN), Valerie Norwood, Elsie Shows, MaryAnn Robles-Valdez, Bobby Martin, Pamela Cooper, and Carlos Rivas // Cross-Appellees, Texas Bankers Association, Finance Commission of Texas, and Credit Union Commission of Texas**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. D-1-GN-04-000269, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## CONCURRING AND DISSENTING OPINION

For the reasons that follow, I respectfully dissent from the majority's resolution of the first issue on appeal. I join the result reached by the majority in the other issues because I agree that the rules promulgated by the Finance Commission of Texas and the Credit Union Commission of Texas (collectively, the "Commissions") should be upheld. However, I do not agree with the analysis employed by the majority in these issues because in resolving all of the issues on appeal, the majority reviews the rules promulgated by the Commissions in the same manner that this Court typically treats rules promulgated by administrative agencies. The majority's election to review the rules using traditional canons of construction ignores the unique grant of authority bestowed upon the Commissions by the constitution and by the legislature. It also fails to address what the

judiciary's role is, if any, regarding the review of the Commissions' rules in light of the sweeping authorization given to those agencies.

The rules at issue in this appeal originate from a series of constitutional amendments. As mentioned in the majority opinion, in 1997 the citizens of Texas passed an amendment to the Homestead Provision of the constitution that allows bankers in Texas to issue home-equity loans provided that certain criteria are met. *See* Tex. Const. art. XVI, § 50. The condition at issue in this case limits the fees that a homeowner may be charged for obtaining the loan. Specifically, the provision states that a bank may:

> not require the owner or the owner's spouse to pay, *in addition to any interest*, fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit.

Tex. Const. art. XVI, § 50(a)(6)(E) (emphasis added). The voters also passed a second amendment allowing the legislature to empower one or more state agencies to interpret the home-equity-loan amendment to the Homestead Provision. *Id.* § 50(u).[1] In light of this constitutional authorization,

---

[1] Subsection 50(u) provides as follows:

The legislature may by statute delegate one or more state agencies the power to interpret Subsections (a)(5)–(a)(7), (e)–(p), and (t), of this section. An act or omission does not violate a provision included in those subsections if the act or omission conforms to an interpretation of the provision that is:

(1) in effect at the time of the act or omission; and

(2) made by a state agency to which the power of interpretation is delegated as provided by this subsection or by an appellate court of this state or the United States.

the legislature enacted laws empowering the Commissions to issue "interpretations" of the home-equity-loan amendment. Tex. Fin. Code Ann. §§ 11.308 (pertaining to finance commission), 15.413 (West Supp. 2009) (empowering credit union commission); *see also Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996) (stating that courts "must liberally construe any constitutional provision that directs the Legislature to act for a particular purpose").

After the legislature passed the provisions allowing the Commissions to interpret the home-equity-loan amendment, the Commissions adopted rules governing home-equity lending. *See* 7 Tex. Admin. Code §§ 153.1-.96 (2009). Among other things, the rules clarify what the term "interest" in the amendment means. Those rules form the subject of this appeal.

The fact that the rules were promulgated in response to a delegation of authority to administrative agencies by the constitution is significant and unprecedented. Typically, agencies are empowered by the legislature, not by the constitution. Moreover, the delegation at issue specified that the Commissions have the authority to "interpret" the home-equity-loan amendment. *See* Tex. Const. art. XVI, § 50(u); *see also id.* art. II, § 1 (explaining that one branch of government may exercise powers typically reserved for one of remaining branches when expressly authorized by constitution). In light of this unique delegation, it is not entirely clear that this Court has any authority to review or invalidate the rules at issue in this case. *Cf. State v. Thomas*, 766 S.W.2d 217, 219 (Tex. 1989) (explaining that legislature cannot "by statute abrogate the Attorney General's constitutional grant of power" and that constitutional balance of powers may only be altered "by constitutional amendment"). Assuming that such authority exists, our ability to review the

---

Tex. Const. art. XVI, § 50(u).

Commissions' rules regarding the home-equity-loan amendment would have to be more limited than the review that we typically use regarding agency rules and that was used by the majority in this case.

In its opinion, the majority concludes that the rules identified in all but the first issue should be upheld. Because I believe that a more deferential standard should have been applied, I would also conclude that the rules should be upheld. Accordingly, I join the result reached by the majority in its resolution of these issues.

Under that more deferential standard, I would also conclude that the rules addressed in the first issue survive appellate scrutiny. However, even assuming that the typical and less deferential standard applies, I would still conclude that the rules discussed in that issue should be upheld. The traditional guidelines instruct us that an agency's construction of a governing law that it is charged with enforcing is entitled "to serious consideration by reviewing courts, so long as the construction is reasonable and does not contradict" the law's plain language. *Employees Ret. Sys. v. Jones*, 58 S.W.3d 148, 151 (Tex. App.—Austin 2001, no pet.). In other words, when determining whether a rule is valid, courts must determine whether the rule is in harmony with or contrary to the relevant governing scheme. *Texas Orthopaedic Ass'n v. Texas State Bd. of Podiatric Med. Exam'rs*, 254 S.W.3d 714, 719 (Tex. App.—Austin 2008, pet. abated) (op. on reh'g). If the rule has "no supporting statutory authority, the rule is void." *Id.*

Before delving into the merits of this issue, a brief discussion of the context in which the rules were promulgated is necessary. The home-equity-loan amendment is not the only constitutional provision implicated by this case. Another provision empowers the legislature to define "interest." Tex. Const. art. XVI, § 11 (stating that "Legislature shall have the authority to

define interest and fix maximum rates of interest"). In light of this broad authority, the legislature defined interest in the financial code. Tex. Fin. Code Ann. § 301.002(a)(4) (West 2006). That definition provides as follows:

> "Interest" means compensation for the use, forbearance, or detention of money. The term does not include time price differential, regardless of how it is denominated. The term does not include compensation or other amounts that are determined or stated by this code or other applicable law not to constitute interest or that are permitted to be contracted for, charged, or received in addition to interest in connection with an extension of credit.

*Id.* § 301.002(a)(4) (West 2006). When they promulgated their rules interpreting the home-equity-loan amendment, the Commissions adopted the definition of "interest" found within the financial code, 7 Tex. Admin. Code § 153.1(11), and explained that interest charges "are not fees subject to the three percent limitation" found in the home-equity-loan amendment, *id.* § 153.5(3).

The majority supports its determination that the definition chosen by the Commissions is invalid by asserting that the definition adopted by the Commissions is pulled from the financial code provisions governing usury. *See* Tex. Fin. Code Ann. §§ 302.001-.002 (West 2006) (constituting subchapter entitled "Usurious Interest"). The majority reasons that the usury provisions require a broad definition for interest because they are consumer oriented whereas the fee cap in the home-equity-loan amendment must be given a more limited definition in order to comply with the legislative intent of protecting homeowners.

However, the legislative definition for "interest" is not found within the usury provisions and is instead listed in the "GENERAL PROVISIONS" of the financial code containing the definitions for terms that are to be used in the subtitle governing the use of interest. *See id.*

5

§§ 301.001-.002 (West 2006) (containing general provisions); *see also id.* §§ 301.001-339.005 (West 2006 & Supp. 2009) (encompassing "INTEREST" subtitle of title 4 of finance code; title 4 is entitled "REGULATION OF INTEREST, LOANS, AND FINANCED TRANSACTIONS"). Although that definition is used in the usury provisions of the "Interest Rates" chapter, *see id.* § 302.001-.002, (West 2006), it is also used in the provisions of the subtitle not specifically addressing usury, *see generally id.* §§ 302.102-339.005 (addressing, among other things, rate ceilings, judgment interest, and commercial loans). This definition is also directly incorporated into another subtitle of the financial code governing loans and financial transactions and containing provisions that do not pertain to usury. *See id.* § 341.001(8) (West 2006); *see also id.* §§ 341.001-350.004 (West 2006 & Supp. 2009) (comprising subtitle B of title 4).

These non-usurious provisions would not seem to have the same consumer-oriented concerns that the majority relies on in asserting that the Commissions' definition is improper. Because the legislature chose to use the same definition for interest in the usury and in the non-usury portions of the financial code, we must presume that the legislature weighed any potential conflicts between these types of statutes and crafted a definition for interest that reconciled those conflicts.

In addition, when determining the validity of a law, we must presume that the legislature enacted the statute "with complete knowledge of existing law and with reference to it." *In re Garcia*, 944 S.W.2d 725, 727 (Tex. App.—Amarillo 1997, no writ). Although that canon of construction is typically employed when construing statutes, it would also seem to apply to constitutional provisions proposed by the legislature. In this case, the legislature proposed a constitutional amendment allowing an agency to interpret the home-equity-loan amendment after the

6

legislature had already codified a definition for interest. Moreover, after the Commissions' rule became effective in 2004, *see* 7 Tex. Admin. Code § 153.1, the legislature revised its definition of "interest" by adding the last sentence found in the current definition,[2] *see* Act of May 29, 2005, 79th Leg., R.S., ch. 1018, § 2.01, 2005 Tex. Gen. Laws 3438, 3439-40. In light of the prior promulgation of the rule, the fact that the legislature chose not to exclude its definition for interest from the home-equity-loan context is some indication that the legislature intended for its definition to apply. *See Bullock v. Marathon Oil Co.*, 798 S.W.2d 353, 357 (Tex. App.—Austin 1990, no writ) (explaining that "if an agency interpretation is in effect at the time the legislature amends the law without making any substantial change in the statute, the legislature is deemed to have accepted the agency's interpretation").

Furthermore, because the Commissions chose to adopt the definition for interest that was codified by the legislature, the Commissions' rules are consistent with the statutory definition of "interest" and, accordingly, clearly have statutory support. *See* 7 Tex. Admin. Code § 153.1(11). It is hard to imagine a more reasonable manner in which the Commissions could have attempted to give effect to the legislature's intent than using the very definition adopted by the legislature. This seems particularly true where, as here, the legislature's definition was also made in response to a constitutional directive.

---

[2] The last sentence reads as follows: "The term does not include compensation or other amounts that are determined or stated by this code or other applicable law not to constitute interest or that are permitted to be contracted for, charged, or received in addition to interest in connection with an extension of credit." Tex. Fin. Code Ann. § 301.002(a)(4) (West 2006).

7

In light of the preceding, I would conclude that the Commissions' rule is reasonable, does not contradict the amendment's plain language, and is in harmony with the relevant governing scheme. Accordingly, I would reverse the portion of the trial court's ruling invalidating the Commissions' rules adopting and using the definition of interest found in the financial code.[3] Although I personally might not endorse a definition for interest that could lead to homeowners being charged higher fees in connection with home-equity loans, this Court does not have the authority to countermand the actions of the legislature or the will of the people expressed by the passage of a constitutional amendment empowering the Commissions to act in the manner that they did.

For the reasons previously given, I dissent from the majority's resolution of the first issue but concur with the result reached by the majority in all of the remaining issues on appeal.

David Puryear, Justice

Before Justices Patterson, Puryear, and Henson

Filed:   January 8, 2010

---

[3] In its judgment, the district court invalidated the rule containing the definition of interest and various rules using that definition. *See* 7 Tex. Admin. Code §§ 153.1(11), 153.5(3), (4), (6), (8), (9), (12) (2009). The same reasons compelling my determination that the district court erred by invalidating the rule defining interest would also compel me to conclude that the district court erred by invalidating the rules using that definition.