ACCEPTED
03-14-00774-CV
6829376
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/8/2015 3:05:55 PM
JEFFREY D. KYLE
CLERK

NO. 03-14-00774-CV

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/8/2015 3:05:55 PM
~~JEFFREY D. KYLE~~
Clerk

TEXAS STATE BOARD OF VETERINARY MEDICAL EXAMINERS
AND NICOLE ORIA, IN HER OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR

*Appellant*,

V.

ELLEN JEFFERSON, D.V.M.

*Appellees*.

_____

ON APPEAL FROM THE 250TH JUDICIAL DISTRICT COURT
OF TRAVIS COUNTY, TEXAS

_____

**BRIEF OF APPELLEE ELLEN JEFFERSON, D.V.M.**

_____

DAVID F. BROWN
State Bar No. 03108700
dbrown@ebblaw.com
DAVID P. BLANKE
State Bar No. 02453600
dblanke@ebblaw.com
EWELL, BROWN & BLANKE, LLP
111 Congress Ave., 28th Floor
Austin, TX 78701
Ph: (512) 457-0233

RYAN CLINTON
State Bar No. 24027934
rdclinton@dgclaw.com
DAVIS, GERALD & CREMER, P.C.
111 Congress Ave., Suite 1660
Austin, Texas 78701
Ph: (512) 537-9938
Fax: (432) 687-1735

Counsel for Appellee Ellen Jefferson, D.V.M.

Oral Argument Requested

**IDENTITY OF PARTIES**

**Appellants/Defendants:**

Texas State Board of Veterinary Medical Examiners ("TBVME") and Nicole Oria, In Her Official Capacity as Executive Director

**Counsel for Defendants:**

Andrew Lutostanski
State Bar No. 24072217
andrew.lutostanski@texasattorneygeneral.gov
Ted A. Ross
State Bar No. 24008890
ted.ross@texasattorneygeneral.gov
Office of the Attorney General of Texas
Administrative Law Division
P. O. Box 12548
Austin, TX 78711
(512) 475-4200

**Appellee/Plaintiff:**

Ellen Jefferson, D.V.M. ("Dr. Jefferson")

**Counsel for Dr. Jefferson:**

*Trial & Appellate Counsel:*

David F. Brown
State Bar No.  03108700
dbrown@ebblaw.com
David P. Blanke
State Bar No. 02453600
dblanke@ebblaw.com
Ewell, Brown & Blanke, LLP
111 Congress Ave., 28th Floor
Austin, TX 78701
Ph: (512) 457-0233

*Appellate Counsel:*

Ryan Clinton
State Bar No. 24027934
rdclinton@dgclaw.com
Davis, Gerald & Cremer, P.C.
111 Congress Ave., Suite 1660
Austin, Texas 78701
Ph: (512) 537-9938
Fax: (432) 687-1735

# TABLE OF CONTENTS

IDENTITY OF PARTIES ....................................................................................... i

APPENDIX......................................................................................................... iv

TABLE OF AUTHORITIES ...................................................................................v

STATEMENT OF THE CASE ............................................................................ viii

STATEMENT REGARDING ORAL ARGUMENT .................................................x

ISSUES PRESENTED ........................................................................................ xi

INTRODUCTION..................................................................................................1

STATEMENT OF FACTS......................................................................................3

SUMMARY OF THE ARGUMENT .......................................................................3

ARGUMENT .......................................................................................................8

    I.     Board Rules Inconsistent With the Owner Exemption Are Facially Invalid and May Not Be Applied to Dr. Jefferson. .................8

          A.    The Analytical Framework for Determining the Invalidity of the Board's Rules ................................................. 8

          B.    The Purposes of Chapter 801 and the "Owner Exemption" ......................................................................... 11

          C.    Each of the Challenged Rules Is Invalid................................. 14

                1.    Board Rule § 573.72, Employment by Nonprofit or Municipal Corporations, Is Invalid...............................17

                2.    Board Rule § 573.80(2), Defining the Statutory Term "Designated Caretaker," Is Invalid. ......................22

PRAYER............................................................................................................29

CERTIFICATE OF SERVICE...............................................................................31

CERTIFICATE OF COMPLIANCE .......................................................................32

**APPENDIX**

22 TEX. ADMIN. CODE § 573.72 .......................................................... TAB A

22 TEX. ADMIN. CODE § 573.80(2) ..................................................... TAB B

Trial Court Judgment ....................................................................... TAB C

iv

**Page(s)**

**Cases**

*Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,*
    209 S.W.3d 644, 651-52 (Tex. 2006) ....................................................9

*City of Corpus Christi v. Public Util. Comm'n,*
    51 S.W.3d 231 (Tex. 2001).............................................................22

*City of Rockwall v Hughes,*
    246 S.W.3d 621, 625-26 (Tex. 2008) ................................................10

*Employees Ret. Sys. of Tex. v. Jones,*
    58 S.W.3d 148, 154 (Tex. App.—Austin 2001, no pet.)....................9

*Gulf Coast Coalition of Cities v. PUC,*
    161 S.W.3d 706 (Tex. App.—Austin 2005, no pet.)......................9, 10

*Harlingen Family Dentistry, P.C., v. Tex. HHS Comm'n,*
    452 S.W.3d 479 (Tex. App.—Austin 2014, pet. filed) ..............................*passim*

*Physician Assistants Business Alliance of Texas, LLC v. Texas*
    *Medical Board,*
    2015 Tex. App. LEXIS 1492 (February 13, 2015)........................8, 9, 22, 25, 26

*PUC of Texas v. City Public Service Board of San Antonio,*
    53 S.W.3d 310 (Tex. 2000)..............................................................9

*Railroad Comm'n of Tex. v. Lone Star Gas Co.,*
    844 S.W.2d 679, 685 (Tex. 1992) ....................................................10

*State v. Shumake,*
    99 S.W.3d 279, 284 (Tex. 2006) .......................................................8

*In re State Bd. for Educator Certification,*
    452 S.W.3d 802, 808-09 (Tex. 2014) ................................................17

*Teladoc, Inc. v. Tex. Med. Bd.,*
    453 S.W.3d 606 (Tex. App.—Austin 2014, pet. filed) ..........................8, 16, 17

*Texas Bd. of Chiropractic Examiners v. Tex. Med. Ass'n*,
  375 S.W.3d 464 (Tex. App.—Austin 2012, pet. filed) .......................9, 10, 20, 28

*Texas Office of Public Utility Counsel v. Public Util. Comm'n of
  Texas*
  131 S.W.3d 314, 321 (Tex. App.—Austin 004, pet. denied) ..............................9

*Texas Orthopaedic Ass'n v. Tex. State Bd. of Med. Exam'rs*,
  254 S.W.3d 714 (Tex. App.—Austin 2008, pet. denied) ...................................10

**Statutes**

Act of March 16, 1911, § 13 (Chapter 76, General Laws) ("Act of
  March 16, 1911")..................................................................................12, 13

TEX. GOV'T CODE § 311.011................................................................................28

TEX. GOV'T CODE § 2001.038.....................................................................ix, 2, 8

TEX. OCC. CODE § 801.002(5) ...........................................................................13

TEX. OCC. CODE § 801.002(7) ...........................................................................13

TEX. OCC. CODE § 801.004 .........................................................................*passim*

TEX. OCC. CODE § 801.151 ....................................................................11, 14, 16

TEX. OCC. CODE § 801.251 ...............................................................................11

TEX. REV. CIV. STAT. ANN. art. 7465a (1953) ....................................................13

TEX. REV. CIV. STAT. ANN. art. 7465a § 3 (1987) ...............................................13

TEX. REV. CIV. STAT. ANN. art. 8890 § 3 (1993) ................................................13

**Other Authorities**

22 TEX. ADMIN. CODE § 571.61 ........................................................................23

22 TEX. ADMIN. CODE § 573.72 ..................................................................*passim*

22 TEX. ADMIN. CODE § 573.80(2) ..............................................................*passim*

20 TEX. REG. 6580 (August 25, 1995) ..........................................................18, 23

20 Tᴇx. Rᴇɢ. 8905 (October 27, 1995)..............................................................18, 23

31 Tᴇx. Rᴇɢ. 5538 (July 14, 2006) .......................................................................18

31 Tᴇx. Rᴇɢ. 9033 (November 3, 2006)...............................................................18

http://www.merriam-webster.com/dictionary/designate;
    http://www.merriam-webster.com/dictionary/caretaker (last visited
    September 1, 2015) ...................................................................................27. 28

http://www.veterinary.texas.gov/agency.php .......................................................14

## STATEMENT OF THE CASE

*Nature of the Case*:   This is a challenge to certain rules promulgated by the Texas Board of Veterinary Medical Examiners that interfere with an express, legislative exception to TBVME's regulatory authority. 22 TEX. ADMIN. CODE § 573.72, entitled "Employment by Nonprofit or Municipal Corporations," and § 573.80(2), the definition of "designated caretaker," expressly interfere with the right the Texas Legislature bestowed under TEX. OCC. CODE § 801.004(1) that permits owners, their employees, or their designees to treat or care for the owner's animals in any manner without regulation.

*Trial Court*:   The Honorable Gisela D. Triana, sitting in the 250th Judicial District Court of Travis County, Texas

*Trial Court Disposition*:   Pursuant to the agreement of the parties, the trial court held a combined plea-to-the-jurisdiction hearing and trial on the merits on August 4, 2014. 2.RR.7-226. Following the trial, the trial court issued a letter ruling, 1.CR.852-54, followed by a judgment, 1.CR.855-57. The trial court also issued findings of fact and conclusions of law. 2.CR.36-38.[1]

In relevant part, the trial court's judgment:

- denies TBVME's plea to the jurisdiction with respect to Dr. Jefferson's challenges to TBVME rules under TEX. GOV'T CODE § 2001.038, 1.CR.855-56; and
- declares that 22 TEX. ADMIN. CODE §§ 573.72 and 573.80(2) are "contrary to Section 801.004(1) of the Veterinary Practice Act and therefore invalid," 1.CR.856-57.

---

[1] The trial court clerk issued two volumes of the Clerk's Record but mistakenly labeled both "Volume 1 of 1." This brief will refer to the volume filed on December 17, 2014 as Volume 1, and the volume filed on January 13, 2015 as Volume 2. Citations to the Clerk's Record herein will be in the form [Volume].CR.[Page]. Likewise, citations to the Reporter's Record will be in the form [Volume].RR.[Page] or, if the citation is to a page of an exhibit, [Volume].RR.[Exhibit:Page].

Defendants and Dr. Jefferson timely filed notices of appeal. 1.CR.866-67 (Defendants' Notice); 1.CR.871-72 (Dr. Jefferson's Notice).

## STATEMENT REGARDING ORAL ARGUMENT

Because those parts of the trial court's judgment in favor of Dr. Jefferson are consistent with the unambiguous terms of the Occupations Code and binding precedent from this Court and the Texas Supreme Court, this Court may deem it unnecessary to hear oral argument before affirming the trial court's judgment with respect to Dr. Jefferson's rules challenges. Nonetheless, the Court may consider oral argument beneficial given the number of issues involved in this appeal. Accordingly, Dr. Jefferson respectfully requests the opportunity to participate in oral argument.

## ISSUES PRESENTED

Did the trial court err in finding that 22 TEX. ADMIN. CODE §§ 573.72 and 573.80(2) are inconsistent with Section 801.004(1) of the Texas Occupations Code, the "Owner Exemption" to the Veterinary Licensing Act?

**INTRODUCTION**

For decades, the Texas Board of Veterinary Medical Examiners has had no authority to regulate "the treatment or care of an animal in any manner by the owner of the animal, an employee of the owner, or a designated caretaker of the animal, unless the ownership, employment, or designation is established with the intent to violate this chapter." TEX. OCC. CODE § 801.004(1) (the "Owner Exemption"). Despite this unambiguous limitation on the TBVME's authority, the agency has attempted over the years to chip away at the express statutory limitation of the Owner Exemption through the adoption of rules that contravene specific terms of the Veterinary Licensing Act (the "Act"), run counter to the general objectives of the statute, and impose burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions, including the Owner Exemption. The Board Rules challenged in this case are instruments by which the TBVME neuters the Owner Exemption.

Notwithstanding its recognition in its official publication in 2012 that animal shelters like San Antonio Pets Alive! ("SAPA"), one of Ellen Jefferson, D.V.M.'s ("Dr. Jefferson's") organizations, may provide treatment and care to animals owned by the shelters without regard to the agency's rules and regulations because shelters are "exempt" from the TBVME's jurisdiction as a matter of law, the TBVME brought charges against Dr. Jefferson contending that her treatment or

1

care of the animals SAPA owned, and the treatment or care provided by other employees or designated caretakers of SAPA, was subject to discipline under the Act and its rules. Dr. Jefferson challenged both the TBVME's *ultra vires* prosecution and certain rules under which that action was prosecuted.

After a combined plea hearing and trial on the merits, which included a hearing on the validity of the TBVME's rules, the trial court agreed that certain TBVME administrative rules contradicted or unduly burdened the legislative Owner Exemption and found those rules to be invalid. For each of the reasons presented in this brief, this Court should affirm the trial court's judgment under Section 2001.038 of the Texas Government Code invalidating 22 TEX. ADMIN. CODE §§ 573.72 and 573.80(2) and hold, pursuant to Texas law, that the TBVME's rules that conflict with the Owner Exemption are invalid and may not be enforced.

## STATEMENT OF FACTS

This appeal arises out of the TBVME's use of certain administrative rules in its *ultra vires* prosecution of Dr. Jefferson for activities excepted from the TBVME's jurisdiction by the Owner Exemption. The statement of facts set forth in Dr. Jefferson's appellant's brief is useful to an understanding of the extent to which the TBVME's adoption, application, and enforcement of the rules challenged herein interfere with or impair, or threaten to interfere with or impair, Dr. Jefferson's legal rights or privileges. Dr. Jefferson will not, however, burden the record with a redundant explication of the facts that give rise to this case, but respectfully refers the Court to her appellant's brief.

## SUMMARY OF THE ARGUMENT

At the trial court, Dr. Jefferson challenged several TBVME rules, contending that they were facially invalid because they squarely contradict the terms and policy of Section 801.004(1) of the Texas Occupations Code, the "Owner Exemption" to the Veterinary Licensing Act. After a trial on the merits, the trial court found two TBVME rules, 22 TEX. ADMIN. CODE §§ 573.72 and 573.80(2) to be invalid. The TBVME appeals that determination.

The challenged rules are invalid because they contravene specific statutory language, run counter to the general objectives of the statute from which they arise, or impose burdens, conditions, or restrictions in excess of or inconsistent with the

3

relevant statutory provisions. Where, as here, the words of the statutory provisions in issue are not defined by the Legislature and have no technical or acquired meaning, this Court must construe the words according to their plain and common meaning unless a contrary intent is apparent from the context. Because the Owner Exemption is unambiguous, the TBVME is owed no deference in its interpretation.

The TBVME has shown through the adoption of the challenged rules its disdain for the Legislature's recognition of the property rights of animal owners through the repeated enactment of the Owner Exemption. That the Board has a concern that the Owner Exemption may be abused if its rules are not upheld does not excuse the Board's adoption of provisions intended to give the Board itself authority the Legislature reserved to animal owners under the Owner Exemption. The Legislature did not grant the agency authority to restrict the exemption, and it may not grant itself new authority it thinks expedient.

Board Rules §§ 573.72 and 573.80(2) are facially invalid and void for the following reasons:

1. **Board Rule § 573.72, "Employment by Nonprofit or Municipal Corporation."**

    a. Board Rule § 573.72(b) and (c) each make persons to whom the Act "does not apply" subject to it. In contrast to the terms of the Owner Exemption, under Board Rule § 573.72, owners, employees of owners, and designated caretakers are "not

exempt" but "shall be liable" for any violation of the Act or TBVME rules. This rule, therefore, directly contradicts the Owner Exemption whenever a veterinarian is employed by or designated to care for the animals of a nonprofit or municipal corporation.

b. Board Rule § 573.72(c) improperly extends liability to veterinarians employed by nonprofit or municipal corporations for the actions of others, even though those persons are themselves exempt from the Act as employees or designees. This rule places a burden upon the Owner Exemption by making an exempt veterinarian liable for violations of the Act or Board rules resulting from the otherwise exempt activities of anyone, including an employee or volunteer of a nonprofit or municipal corporation, in treating or caring for an animal the nonprofit or municipal corporation owns.

Board Rule § 573.72, therefore, contradicts the express terms of the Act and extends TBVME authority where the Legislature has determined that people should be free from agency regulation. Board Rule § 573.72 is invalid.

**2. Board Rule § 573.80, Definition of "Designated Caretaker."**

a. Abandoning the plain meaning of the term "designated caretaker" in the Owner Exemption, the TBVME contradicts the Legislature's recognition of the property rights of animal owners in lieu of a scheme of regulation that usurps the Owner Exemption for caretakers an owner lawfully designates.

b. In contrast to the position of the TBMVE, it is the Legislature that has the power to decide the scope of its authorizing statutes, not the agency. Yet the TBVME definition negates the exemption where the designated caretaker "engag[es] in any aspect of the practice of veterinary medicine (including alternate therapies)," regardless of capacity, circumstances, or intent. As this Court has held on numerous occasions, a rule is void where it conflicts with the plain language of a statute. A rule may not narrow the scope of a legislatively mandated exemption.

c. Further, the TBVME definition of "designated caretaker" improperly burdens the right of an owner, or a caretaker the owner designates, to the express statutory benefits of the Owner Exemption. Board Rule § 573.80(2) establishes a presumption

6

that a designated caretaker of an animal intends to violate the Act if she "treats an animal for a condition that the animal was known or suspected of having prior to the person being named a designated caretaker . . .," unless she obtains veterinary supervision.

Through the challenged rules, the TBVME transparently imposes burdens, conditions, or restrictions upon the Owner Exemption that contravene the unambiguous terms of the Act. The TBVME's enforcement of Chapter 801 and its rules where the Owner Exemption is applicable is an illegitimate exercise of a power contradictory to its enabling Act, interfering with or impairing the legal rights of owners, employees of owners, or the owners' designees to be free of regulation. The challenged rules contravene specific statutory language, run counter to the general objectives of the statute, and impose additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provision. The Court should affirm the trial court's finding that the challenged rules are invalid.

**I.** **BOARD RULES INCONSISTENT WITH THE OWNER EXEMPTION ARE FACIALLY INVALID AND MAY NOT BE APPLIED TO DR. JEFFERSON.**

    **A.** **The Analytical Framework for Determining the Invalidity of the Board's Rules**

Section 2001.038(a) of the Administrative Procedure Act, Chapter 2001, Texas Government Code, provides a court with the jurisdiction to hear a challenge to the validity or applicability of an administrative rule when it is alleged that "the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff."[2] The Administrative Procedure Act authorizes Texas courts to "render a declaratory judgment without regard to whether the [plaintiff first] requests the state agency to rule on the validity or applicability of the rule in question."[3] The challenged Board Rules §§ 573.72 and 573.80(2) interfere with the right of animal owners to treat or care for the animals they own under the Owner Exemption.

The issues in this case involve the construction of TBVME's authorizing statute and its rules; accordingly, this Court reviews the trial court's conclusions de novo.[4] A rules-validity challenge under Section 2001.038 of the Texas

---

[2]     TEX. GOV'T CODE § 2001.038(a).

[3]     *See* TEX. GOV'T CODE § 2001.038(d).

[4]     *Physician Assistants Business Alliance of Texas, LLC v. Texas Medical Board*, 2015 Tex. App. LEXIS 1492 at *5 (February 13, 2015) (*citing State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006)); *Teladoc, Inc. v. Tex. Med. Bd.*, 453 S.W.3d 606, 614 (Tex. App.—Austin 2014, pet. filed).

Government Code tests a rule on procedural and constitutional grounds, and specifically, on the question of whether the agency "acted contrary to statute."[5]  A rule is presumed valid, and Dr. Jefferson has the burden of demonstrating its invalidity.[6]  "To establish the rule's facial invalidity," Dr. Jefferson "must show that the rule: (a) contravenes specific statutory language; (b) runs counter to the general objectives of the statute; or (c) imposes burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions."[7]

Looking first to the plain language of the statute to ascertain and give effect to legislative intent, the court looks no further than the literal text if the language is unambiguous.[8]  Where the words of the statute in issue are not defined by the Legislature and have no technical or acquired meaning, the Court must "construe the words according to their plain and common meaning unless a contrary intent is apparent from the context."[9]

---

[5]  *Gulf Coast Coalition of Cities v. PUC*, 161 S.W.3d 706, 712 (Tex. App.—Austin 2005, no pet.) (*citing State of Texas Office of Public Utility Counsel v. Public Util. Comm'n of Texas*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, pet. denied)); *see also PUC of Texas v. City Public Service Board of San Antonio*, 53 S.W.3d 310, 315 (Tex. 2000).

[6]  *Gulf Coast Coalition*, 161 S.W.3d at 712.

[7]  *Id.  See also Texas Bd. of Chiropractic Examiners v. Tex. Med. Ass'n*, 375 S.W.3d 464, 474 (Tex. App.—Austin 2012, pet. filed).

[8]  *Physicians Assistants*, 2015 Tex. App. LEXIS at *5 (*citing Employees Ret. Sys. of Tex. v. Jones*, 58 S.W.3d 148, 154 (Tex. App.—Austin 2001, no pet.); *Alex Sheshunoff Mgmt. Servs., L.P., v. Johnson*, 209 S.W.3d 644, 651-52 (Tex. 2006)).

[9]  *Texas Bd. of Chiropractic Examiners*, 375 S.W.3d at 474 (*citing City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008)).

If a statute is ambiguous, an agency is given some deference in interpreting its enabling statute where the agency's interpretation is both reasonable and does not contradict the plain language of the statute,[10] but no deference is given to the agency's interpretation where the statute is unambiguous.[11] In this context, "[t]he determining factor in deciding whether an administrative agency has exceeded its rule-making authority is whether the rules are 'in harmony' with the general objectives of the legislation involved."[12] An administrative rule may be "in harmony" with legislative objectives only if it does not impose additional burdens, conditions, or restrictions in excess of or inconsistent with relevant statutory provisions.[13] At bottom, the law prohibits an agency from exercising what is effectively a new power or a power contradictory to its enabling statute based on the claim that the power is expedient for administrative purposes.[14] Instead, an agency's rules must comport with the agency's authorizing statute. Unless an

---

[10] *Texas Orthopaedic Ass'n v. Tex. State Bd. of Med. Exam'rs*, 254 S.W.3d 714, 719 (Tex. App.—Austin 2008, pet. denied).

[11] *Texas Bd. of Chiropractic Examiners*, 375 S.W.3d at 475.

[12] *Harlingen Family Dentistry, P.C., v. Tex. HHS Comm'n*, 452 S.W.3d 479, 486 (Tex. App.—Austin 2014, pet. filed) (*citing Railroad Comm'n of Tex. v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex. 1992); *Gulf Coast Coal. of Cities*, 161 S.W.3d at 711).

[13] *Id.* (*citing Gulf Coast Coal.*, 161 S.W.3d at 712).

[14] *Id.* at 482.

agency rule is adopted pursuant to specific or implied statutory authority, it is void.[15]

### B. The Purposes of Chapter 801 and the "Owner Exemption"

Chapter 801 of the Texas Occupations Code provides the TBVME with authority to regulate veterinary medicine.[16] Within the bounds of Chapter 801, the TBVME may regulate the licensure and practice of veterinary medicine, adopt rules consistent with its legislative grant of authority, and enforce both the Act and its rules.[17] The TBVME is subject, however, to the restrictions to its authority set out in Chapter 801 and in iterations of the law over the more than 100 years in which a version of the Veterinary Licensing Act has been in force. Particularly relevant here are the exceptions to the TBVME's authority set forth in Section 801.004(1), the "Owner Exemption." Section 801.004(1), like the remainder of Section 801.004, is an express exemption to the TBVME's authority to regulate an individual's right to practice veterinary medicine.[18]

---

[15] *Id.*

[16] *See, e.g.*, TEX. OCC. CODE § 801.151. Chapter 801 of the Texas Occupations Code, the Veterinary Licensing Act, will be referenced herein as "the Act."

[17] *See id.*

[18] TEX. OCC. CODE § 801.251 provides:

**LICENSE REQUIRED FOR PRACTICE OF VETERINARY MEDICINE.**

***Except as provided in Section 801.004***, a person may not practice, or offer or attempt to practice, veterinary medicine unless the person holds a license to practice veterinary medicine issued under this chapter.

*Id.* (emphasis added).

11

From its inception in 1911, the Act has *always* included exemptions from regulation for livestock practices and care by owners, among other enumerated exemptions. What has evolved into a panoply of exemptions—circumstances in which the Act "does not apply"—was founded in the principle that those who were in the business of veterinary medicine, treating or caring for animals "for compensation, either directly or indirectly," should be regulated; others providing such care, should not.[19] "Persons gratuitously treating animals" were exempted from the Act.[20] Likewise, the Act exempted persons performing a variety of common livestock practices that otherwise would constitute the practice of veterinary medicine,[21] such as "'dehorning,' 'castrating,' and 'spaying'" cattle—

---

[19]    Act of March 16, 1911, § 13 (Chapter 76, General Laws) ("Act of March 16, 1911").

[20]    *Id.*

[21]    Section 801.002 of the Act contains the following relevant definitions pertaining to the practice of veterinary medicine:

> (5) "Practice of veterinary medicine" means:
>
>> (A) the diagnosis, treatment, correction, change, manipulation, relief, or prevention of animal disease, deformity, defect, injury, or other physical condition, including the prescription or administration of a drug, biologic, anesthetic, apparatus, or other therapeutic or diagnostic substance or technique;
>>
>> (B) the representation of an ability and willingness to perform an act listed in Paragraph (A);
>>
>> (C) the use of a title, a word, or letters to induce the belief that a person is legally authorized and qualified to perform an act listed in Paragraph (A); or
>>
>> (D) the receipt of compensation for performing an act listed in Paragraph (A).
>
> * * *
>
> (7) "Veterinary medicine" includes veterinary surgery, reproduction and obstetrics, dentistry, ophthalmology, dermatology, cardiology, and any other discipline or specialty of veterinary medicine.

practices generally undertaken by the owners of livestock, their employees, and their neighbors.[22]

Over the years, the Owner Exemption has evolved:

- In 1953, the Legislature exempted the "[t]reatment or caring for animals in any manner personally by the owner thereof, or by any employee of the owner thereof." [23]

- In 1987, the Legislature added a proviso for circumstances where "the ownership or employment ha[d] been established with the intent of circumventing this Act."[24]

- In 1993, the Legislature added any "designated caretaker" to the classes of persons eligible for the Owner Exemption.[25]

- In 1999, the Act was re-codified as Chapter 801 of the Occupations Code without any substantive revisions to the Owner Exemption, retaining it in its entirety.[26]

The Act's history underscores issues pertinent to the TBVME's appeal. Specifically, the concern of the Act has always been traditional clinical veterinarian practice. The TBVME's enforcement powers have, therefore, been in

---

TEX. OCC. CODE §§ 801.002(5), (7).

[22] Act of March 16, 1911, § 13.

[23] TEX. REV. CIV. STAT. ANN. art. 7465a (1953); *see also id.*, § 3(2)-(7)("male castration on domestic animals, or docking or earmarking of domestic animals," "dehorning cattle, or the spaying of large animals, or operation in aid of the birth process in large animals," "drenching and spraying of domestic animals for internal or external parasites, or vaccination for black-leg, shipping fever, or sore mouth," "[r]ecommendation by a retail distributor of a medicine, remedy or insecticide which is adequately labeled and has been duly registered with the Texas State Department of Health as required by the Texas Livestock Remedy Act when the retail distributor is advised by the customer of the type of ailment which he wishes to treat," "[t]reatment and caring for poultry and rabbits," and "[b]randing animals in any manner").

[24] TEX. REV. CIV. STAT. ANN. art. 7465a § 3 (1987).

[25] TEX. REV. CIV. STAT. ANN. art. 8890 § 3 (1993).

[26] *See* TEX. OCC. CODE § 801.004, enacted in H.B. 3155, 76th Leg. R.S. (1999).

the nature of consumer protection. Indeed, the TBVME has recognized as much in reporting to the Sunset Advisory Committee in its last Sunset Review: "The protection of Texas consumers who are animal owners is the primary focus of the [TBVME's] enforcement program."[27] On its website, the TBVME reiterates that its mission "is to establish and enforce policies to ensure the best possible quality of veterinary and equine dental provider services *for the people of Texas*."[28] The Legislature has not empowered TBVME to interfere with the right of animal owners, their employees, or their designees to treat or care for their animals in any manner, unless they undertake their capacity with the intent to violate the Act.

## C.     Each of the Challenged Rules Is Invalid

Section 801.151 of the Act permits the TBVME to adopt rules "as necessary to administer [the Act]," including rules to "protect the public."[29] These rules must

---

[27]     Self-Evaluation Report Submitted to the Sunset Advisory Commission, Texas State Board of Veterinary Medical Examiners at 22 (August 18, 2003) ("Self-Evaluation Report); *see also id*. at 28 ("Through regulation, the public is assured that those who are entrusted with the care of their animals follow guidelines that protect the patient and protect the health and welfare of the public. Regulation also provides consumers with an avenue that allows their concerns to be addressed. The Board, through its Enforcement Division, provides these services to the public.").

[28]     Texas State Board of Veterinary Medical Examiners, Home Page (emphasis added), http://www.veterinary.texas.gov/agency.php (emphasis added)(last visited September 3, 2015); *see also id*. (TBVME's home page also recites that "[t]he purpose of the Board is to *protect the public* by ensuring that *persons entering the profession* meet minimum academic and examination requirements," and "[t]he Board also establishes and enforces policies to ensure the best possible quality of veterinary services for the *citizens of Texas*") (emphasis added).

[29]     TEX. OCC. CODE § 801.151. *See also* §§ 801.151(f) (restrictions on rules unreasonably restricting owner or caretaker's selection of equine dental provider); 801.153 (prohibiting rules restricting truthful advertising or competitive bidding).

14

be evaluated, however, in the context of the statute on which they are based and with which they may not conflict.[30] The TBVME simply may not regulate where the Legislature has unambiguously stated that Chapter 801 "does not apply."[31] Specifically, the Act provides in pertinent part that:

> This chapter does not apply to:
>
> (1)　the treatment or care of an animal in any manner by the owner of the animal, an employee of the owner, or a designated caretaker of the animal, unless the ownership, employment, or designation is established with the intent to violate this chapter . . . .[32]

The Owner Exemption to the applicability of the Act—the entire Act—is clear, and the Legislature has limited it in only one way: the ownership, employment, or designation may not be undertaken "with the intent to violate [the Act]."[33] Accordingly, where certain conditions exist—in this instance, where the activities in issue are the treatment or care of an animal by its owner, an employee of the owner, or the owner's designee—the Legislature has denied the TBVME authority to regulate. Whether the agency thinks that adopting new rules or interpreting old

---

[30]　*Harlingen Family Dentistry, P.C.,* 452 S.W.3d at 481-82.

[31]　TEX. OCC. CODE § 801.004. Dr. Jefferson does not contend that she is exempt, as a TBVME licensee, from regulations pertaining to her activities as a licensee, such as registration and fee-payment requirements; continuing education obligations; or the practice of veterinary medicine, should it occur, for animals that are not owned by the organizations for which she is an officer, employee, or designated caretaker. However, Occupations Code Chapter 801 and the TBVME's rules "do not apply" to her activities appurtenant to the treatment or care of animals her organizations own.

[32]　TEX. OCC. CODE § 801.004(1).

[33]　*Id.*

15

ones in ways that invade the Owner Exemption is a good idea or expedient, it may not do so.[34] And, because the TBVME's rulemaking authority arises solely by means of Section 801.151, which "does not apply" where these conditions exist, the TBVME's rules do not apply to these activities.

The agency attempts to justify its contradiction of the Act by contending that without the challenged rules, it cannot "protect the public from the unsafe practice of veterinary medicine."[35] But as this court recently wrote in *Teladoc, Inc. v. Texas Medical Board*:

> [W]here, as here, an agency's legal or policy pronouncements seek to control the conduct of a free people through the assertion or threatened assertion of State power, agency "impotence" is hardly the relevant concern under our Constitution and laws. Rather, it is the risk that agencies—whose legitimate authority and very existence must derive from law and not merely perceived "expediency"—will stray from their legal limitations (perhaps with the best of individual intentions, but exceeding them nevertheless) through what federal courts have aptly termed a "tyranny of small decisions" that substantively assert Executive or Legislative power over the citizenry through forms calculated to avoid the meaningful checks and balances the Framers intended the Judiciary to provide.[36]

The tyranny the TBVME visits upon animal owners, their employees, and their designees, particularly in the life-saving, animal shelter context, arises from rules contradicting the relevant statutory language. The TBVME transparently imposes burdens, conditions, or restrictions upon the Owner Exemption that are

---

[34]  *Harlingen Family Dentistry, P.C.*, 452 S.W.3d at 482.

[35]  Pet. Br. at 6.

[36]  453 S.W.3d at 622 (*citing In re State Bd. for Educator Certification*, 452 S.W.3d 802,

inconsistent with the unambiguous terms of the Act. Further, the TBVME's enforcement of Chapter 801 and its rules where the Owner Exemption is applicable is an illegitimate exercise of a power contradictory to its enabling Act, interfering with or impairing the legal rights of owners, employees of owners, or the owners' designees to be free of regulation. The challenged rules contravene specific statutory language; run counter to the general objectives of the statute; or impose additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provision. These rules contravene the legislative language and intent and are invalid.[37]

### 1. Board Rule § 573.72, Employment by Nonprofit or Municipal Corporations, Is Invalid.

Board Rule § 573.72[38] was originally adopted in 1995 in response to an opinion of the Attorney General determining that statutory corporate practice of

---

808-09 (Tex. 2014)).

[37] *Harlingen Family Dentistry, P.C.*, 452 S.W.3d at 481-82.

[38] Board Rule § 573.72 states:

*§573.72 EMPLOYMENT BY NONPROFIT OR MUNICIPAL CORPORATIONS*

(a) A nonprofit or municipal corporation may employ or contract with a veterinarian to provide veterinary services in connection with sheltering, sterilization, vaccination, or other medical care and treatment of animals.

(b) Employment by or contractual service to a nonprofit or municipal corporation does not exempt the veterinarian from any of the provisions of the Veterinary Licensing Act or the Board's rules.

(c) Veterinarians employed by, or contracted to, nonprofit or municipal corporations shall be liable for any violations of the Act or rules occurring as a result of the practice of veterinary medicine or any veterinary services provided by the nonprofit or municipal

17

veterinary medicine prohibitions do not apply to a veterinarian's employment by a non-profit or municipal corporation.[39] The plain language of subsection (a) of the Board Rule § 573.72 resolves the conflict between TBMVE policy and the Act that the Attorney General identified. Nothing more is needed to correct the TBVME's previous interference with the operations of nonprofit or municipal corporations in employing veterinarians but to recognize, as Board Rule § 573.72(a) does, that there is no risk of the corporate practice of veterinary medicine in the context of a nonprofit or municipal corporation.

Petitioner claims that Board Rule § 573.72 is merely a mechanism for "prevent[ing] a licensed vet from hiding behind the veil of a non-profit or municipal corporation in establishing one of the [Owner E]xemption criteria . . .."[40] The Board further claims that "the rule would obviously not apply" to veterinarians who fall under the Owner Exemption, as long as they "d[o] not intend to

---

corporation, including those occurring due to the acts or omissions of non-licensed employees of, or volunteers for, the nonprofit or municipal corporation.

22 TEX. ADMIN. CODE § 573.72. Board Rule § 573.72 was numbered Board Rule § 573.71 at the time of its original adoption. As it was originally adopted (then Board Rule § 573.71), and as it is now expressed, Rule § 573.72(c) "stipulates that [doctors of veterinary medicine] employed by [nonprofit or municipal] corporations are liable for violations of the Act or [TBVME] rules, as well as acts or omissions of non-licensed employees and volunteers." 20 TEX. REG. 6580, 6581 (August 25, 1995); *see also* 20 TEX. REG. 8908 (October 27, 1995) (adopting the original rule).

[39] *See* Tex. Att'y Gen. LO-95-003 (1995); *see also* 20 TEX. REG. 6581, 6581-82 (August 25, 1995)(Proposed Rules); 20 TEX. REG. 8908 (October 27, 1995) (Order Adopting Rules); 31 TEX. REG. 5538 (July 14, 2006)(Proposed Rules); 31 TEX. REG. 9033 (November 3, 2006) (Order Adopting Rules)(nonsubstantive revisions from the 1995 version).

[40] Pet. Br. at 8.

18

circumvent the provisions of the Act."[41]  The TBVME's post-hoc justifications do not pass muster.  Instead, the remaining subsections of the rule unambiguously and unlawfully reject and restrict the terms of the Owner Exemption.

Specifically, Board Rule § 573.72(b) and (c) each make persons to whom the Act "does not apply" subject to it—under the rule, they are "not exempt" and "shall be liable."  Still worse, Board Rule § 573.72(c) extends liability to veterinarians employed by nonprofit or municipal corporations for the actions of others who are themselves exempt from the Act as employees or designees.  Board Rule § 573.72, therefore, contradicts the express terms of the Act and extends TBVME authority where the Legislature has determined that people should be free from agency regulation.[42]  Each of these rules exceeds the TBVME's authority under the Act.

Contrary to the speculative claims of the TBVME, there is no risk in upholding the trial court's invalidation of the rule.  First, the TBVME's concern that a veterinarian would use employment by a nonprofit or municipal corporation as a "veil" fails to recognize that the Legislature has already dealt with this issue: the Owner Exemption is not applicable where the ownership, employment, or designation has been undertaken with intent to violate the Act.  The rule's blanket

---

[41]     Pet. Br. at 8.

[42]     *See, e.g., Harlingen Family Dentistry, P.C.*, 452 S.W.3d at 481-82.

19

disqualification of veterinarians employed in the nonprofit or municipal corporate context from eligibility under the Owner Exemption simply contradicts the intent of the Legislature, which put no other limitations on the Owner Exemption; and further, it imposes burdens, conditions, or restrictions that the Legislature did not expressly authorize or necessarily imply.[43]  In all instances, the statutory right of a veterinarian or any other person to treat or care for an animal she owns, her employer owns, or for whom she has been designated a caretaker, is negated if the capacity of ownership, employment, or designation is undertaken with the purpose of violating the Act.

Second, the TBVME's contention that the Court should ignore Board Rule § 573.72's restrictions because they "obviously" do not apply to a veterinarian in the Owner Exemption context is nonsense—and contradicts the terms of the rule itself.  Nothing in the rule suggests, much less states, that the statutory Owner Exemption trumps the rule's requirements, whether in the context of a nonprofit or municipal corporation or otherwise.  To the contrary, the express terms of the rule state unambiguously that the Act and the Board's rules apply to veterinarians employed by a nonprofit or municipal corporation for all their activities— necessarily including the treatment or care of the corporation's animals.[44]

---

[43]     *Id.* at 485-86.

[44]     *See Texas Bd. of Chiropractic Examiners*, 375 S.W.3d at 474-75.

20

Finally, while the Board evidently concedes now that Dr. Jefferson is not affected by the restrictions of Board Rule § 573.72(b) or (c) in the context of her work for SAPA or other nonprofit or municipal corporations,[45] the actions of the TBMVE in conducting its prosecution are telling. In the amended notice of hearing that precipitated this case, the TBVME used Board Rule § 573.72 as an express ground for enforcement against Dr. Jefferson or her nonprofit work with SAPA, including the alleged acts of employees or volunteers of SAPA.[46] In citing Board Rule § 573.72 in its allegations against Dr. Jefferson, the TBVME used its rule as a "sword" to create jurisdiction, rather than as a "shield" to protect its statutory authority. The TBVME may not, however, confer jurisdiction upon itself where the Legislature has expressly denied it.

In summary, Board Rule § 573.72 interferes with the Legislature's statement of the Owner Exemption in two ways. First, subsection (b) directly contradicts Section 801.004(1) whenever a veterinarian is employed by or designated to care for the animals of a nonprofit or municipal corporation. Rather than being exempt from the Act for the treatment or care of animals the nonprofit or municipal corporation owns, under Board Rule § 573.72 employees and designees who are

---

[45] "The rule is not intended to apply to veterinarians who fall under the Owner . . . Exception . . .." Pet. Br. at 8.

[46] *See, e.g.*, 1.CR.256-57 (Amended Notice of Hearing, SOAH Docket No. 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, at 7-8)("Board Rule 573.72 makes it clear that veterinarians who work for a non-profit or municipal corporation are subject to the Act and the Board Rules and are also responsible for the

veterinarians are "not exempt" from the Act or Board Rules but "shall be liable" for such violations. *Id.* Second, subsection (c) places a burden upon the Owner Exemption by making an exempt veterinarian liable for violations of the Act or Board rules resulting from the otherwise exempt activities of anyone, including an employee or volunteer of a nonprofit or municipal corporation, in treating or caring for an animal the nonprofit or municipal corporation owns. Board Rule § 573.72 is invalid. [47]

### 2. Board Rule § 573.80(2), Defining the Statutory Term "Designated Caretaker," Is Invalid.

Nowhere in the Act is the term "designated caretaker" used, except in the Legislature's statement of the Owner Exemption. The express terms of the Owner Exemption permit animal owners and those they hire or designate to treat or care for those animals without regard to the restrictions on the practice of veterinary medicine that the Act ordinarily imposes on others. The Legislative grant of this freedom is subject only to the condition that the ownership, employment, or designation not be undertaken with intent to violate the Act.[48]

---

actions of any non-veterinarians who practice veterinary medicine in those corporations.").

[47]  *See City of Corpus Christi v. Public Util. Comm'n*, 51 S.W.3d 231, 236 (Tex. 2001); *see also Physicians Assistants Bus. Alliance of Texas, LLC*, 2015 Tex. App. LEXIS 1492, *6-*7.

[48]  TEX. OCC. CODE § 801.004(1).

In attempting to justify its proviso-filled rule defining the terms for which there is no specialized or technical meaning,[49] the Board contends that, in contrast to the express terms of the Owner Exemption itself, "[t]he intent of [Board Rule § 573.80(2)] is to ensure that non-veterinarians practicing veterinary medicine without a license cannot be exempt from the Act."[50] The Board justifies this position by asserting that "[i]f the rule is invalidated, then anyone caught practicing veterinary medicine without a license could evade responsibility by simply claiming that he or she is a 'designated caretaker.'"[51] Patently hostile to the

---

[49] **§ 573.80(2) DEFINITIONS**

(2) Designated caretaker--a person to whom the owner of an animal has given specific authority to care for the animal and who has not been designated, by using the pretext of being a designated caretaker, to circumvent the Veterinary Licensing Act (Chapter 801, Texas Occupations Code) by engaging in any aspect of the practice of veterinary medicine (including alternate therapies). A designated caretaker who treats an animal for a condition that the animal was known or suspected of having prior to the person being named a designated caretaker, is presumed to be attempting to circumvent the Veterinary Licensing Act unless the designated caretaker is following the instruction of a veterinarian and is under the appropriate level of supervision per board rules. In this situation, the designated caretaker may present evidence to rebut the presumption.

22 TEX. ADMIN. CODE § 573.72.

[50] Pet. Br. at 9.

[51] *Id*. Ironically, in other contexts, the TBVME has recognized that the Owner Exemption permits the practice of veterinary medicine without a license. Specifically, Board Rule § 571.61(b)(1) restricts veterinarians "whose licenses are on inactive status" from engaging "in the practice of veterinary medicine or otherwise provid[ing] treatment" to animals in the State "*[e]xcept as provided in § 801.004, Texas Occupations Code*." *Id*. (emphasis added). *See also* 20 TEX. REG. 6580, 6580-81 (August 25, 1995)(Proposed Rules); 20 TEX. REG. 8905, 8905-06 (October 27, 1995) (Order Adopting Rules) (explaining adoption of both Board Rule §§ 573.61 and 573.71 (now 573.72), under the pre-Occupations Code codification of the Owner Exemption, § 3(a)(1) of the Act). Board Rule § 571.61, therefore, expressly acknowledges the Owner Exemption trumps the general prohibition of an inactively licensed veterinarian "engag[ing] in the practice of veterinary medicine or otherwise provid[ing] treatment to any animal in the State of Texas." In contrast to Board Rule § 573.72, Board Rule § 571.61 expressly recognizes the

statutory Owner Exemption, the TBVME simply exalts its own scheme in place of the judgment of the Legislature. Contrary to the TBVME's rationalization, the definition in Board Rule § 573.80(2) contravenes the plain language of the Owner Exemption, fails to harmonize with the objectives of the Act, and adds burdens, conditions, and restrictions inconsistent with the Owner Exemption. The rule is invalid.[52]

First, the plain terms of Board Rule § 573.80(2) are unlimited. In contrast to the Owner Exemption, the rule expressly *presumes* "persons" are circumventing the Act by being designated a caretaker if they "engag[e] in any aspect of the practice of veterinary medicine." *Id*. As such, the rule applies to veterinarians and lay persons alike, all persons who might at the insistence of an animal's owner provide treatment or care to the animals, including actions that otherwise would constitute the practice of veterinary medicine. By acknowledging in its brief that Board Rule § 573.80(2) deprives any owner, her employee, or her designee the right to treat or care for an animal free of TBVME regulation, the TBVME effectively admits that its intent in adopting the rule is to abrogate the Legislature's judgment that an owner's rights in property are reserved to her. In contrast to the position of the TBMVE, it is the Legislature, not the agency, that has the power to

---

Owner Exemption for inactive veterinarian-owners, employees, and designated caretakers.

[52]     *Harlingen Family Dentistry, P.C.*, 452 S.W.3d at 481-82.

decide the scope of its authorizing statutes. In this case, the Legislature has decided that owners, employees, and designees are categorically exempt from the Act, provided only that they are not undertaking their capacity with the intent to violate the Act. The TBVME may not overrule the Legislature.

Second, beyond the TBVME's clear intent to promote its regulatory authority over the Legislature's century of preserving animal owners' property rights, there are several reasons why Board Rule § 573.80(2) is invalid. Specifically, the terms of Board Rule § 573.80(2) conflict with the Owner Exemption. The Owner Exemption is an express exemption to the Act's general prohibition on the unlicensed practice of veterinary medicine. The Owner Exemption expressly permits owners, employees of owners, and designated caretakers who do not undertake that capacity with the intent to violate the Act to treat or care for their animals in any manner. In contrast, the TBVME definition negates the exemption where the designated caretaker "engag[es] in any aspect of the practice of veterinary medicine (including alternate therapies)," regardless of capacity, circumstances, or intent. As this Court has held on numerous occasions, "A rule is void where it conflicts with the plain language of a statute, and a rule may not narrow the scope of a legislatively mandated exception."[53] The TBVME

---

[53] *See Physicians Assistants Bus.*, 2015 Tex. App. LEXIS 1492, *6-*7.

definition improperly narrows the Owner Exemption for designated caretakers and is, therefore, invalid.

In addition, the TBVME definition of "designated caretaker" improperly burdens the right of an owner, or a caretaker the owner designates, to the express statutory benefits of the Owner Exemption. Board Rule § 573.80(2) establishes a presumption that a designated caretaker of an animal intends to violate the Act if she "treats an animal for a condition that the animal was known or suspected of having prior to the person being named a designated caretaker . . .," unless she obtains veterinary supervision. *Id.* This rules-based limitation on the Owner Exemption for ill animals constitutes a substantive limitation on the scope of the exemption that the Legislature did not authorize and is contrary to expressed legislative intent. Moreover, in an enforcement action, Board Rule § 573.80(2) shifts the burden of proving the designated caretaker's intent in undertaking her capacity from the prosecuting agency to the owner or the designated caretaker herself, again placing a burden upon the Legislature's express exception. Nothing in the Act authorizes either the imposition of the TBVME's condition or the shift in the burden of proof.[54]

Third, despite the inescapable and unlawful consequences of applying the TBVME's rule defining "designated caretaker," the agency simply abandons the

---

[54] *See id.* at *6-*7.

common meaning of the term, complaining that to use the words of the Legislature would lead to "absurd" results.[55]  When it actually addresses the words used in the Owner Exemption, however, the agency relies upon a simplistic, unsourced, and out-of-context deconstruction of the terms "designated" and "care" to excuse its definition.[56]

The agency's deconstruction, however, fails to acknowledge that the term has a unique context in the Act.  Again, the statutory term "designated caretaker" is used solely in the Owner Exemption and derives its essence by reference to the property rights of an animal's owner.  As the TBVME inadvertently acknowledges, an owner of personal property, including an animal, is entitled to appoint any person she desires as a "caretaker" of her property.  But by refusing to recognize the designee's relationship to the owner, the TBVME's analysis abandons the substance of the term.  A "designated" "caretaker" is, indeed, a person "officially cho[sen] . . . to do or be something," with that "something" in this context being to "give[] physical . . . care and support" to the animal or animals in issue.[57]  But in extension of the common definition of "care," the common dictionary meaning of "caretaker" also carries an element of substitute authority.  Specifically, the

---

[55]     Pet. Br. at 9-10.

[56]     Pet. Br. at 10.

[57]     *See*     http://www.merriam-webster.com/dictionary/designate;     http://www.merriam-webster.com/dictionary/caretaker (last visited September 1, 2015).

common definition of designated caretaker implies more than the casual handing off of an animal for the performance of services (even veterinary services), but requires something akin to agency or dominion—being or acting on behalf of the owner herself.[58]

Finally, while an owner has the right to designate anyone, including a veterinarian, to be a "designated caretaker" for her animals under the Owner Exemption, the TBVME's claim that such a construction "would vitiate the entire Act and would create an absurd result which [sic] the legislature never intended" is a *non sequitur*. It simply does not follow that use of the plain meaning of the undefined term "designated caretaker" in the context of the clear terms of the Owner Exemption will lead to regulatory chaos. To the contrary, where, as here, the statute is unambiguous, ascertaining the "ordinary or common meaning" or "plain meaning" is the first resource for determining the drafters' intent, and should guide this Court. The TBMVE definition conflicts with both the express terms of the Owner Exemption and the overall purposes of the Act and is invalid.[59]

---

[58] *E.g.*, "one that takes care of the house or land of an owner who may be absent" or "one temporarily fulfilling the function of an office." *http://www.merriam-webster.com/dictionary/caretaker*.

[59] *See* TEX. GOV'T CODE § 311.011; *see also Texas Bd. of Chiropractic Examiners*, 375 S.W.3d at 474-75.

In reality, it is the application of the Board Rule § 573.80(2) definition of "designated caretaker" that would lead to an "absurd result" that "vitiates the entire Act." Pet. Br. at 10. In real life, the agency's definition provides that the daughter of a dairy farmer whose cattle need medicine each day is "presumed to be attempting to circumvent the [Act]," unless the farmer hires a vet to supervise her daughter according to Board rules. Just for doing her chores, the

This Board Rule is, therefore, inconsistent with the conception that an owner and his or her employees or designees are entitled to perform acts of veterinary medicine free from the restrictions of the Act or the Board Rules. Because Board Rule § 573.80(2), the Board's contrived definition of "designated caretaker," contravenes the specific statutory language of the Owner Exemption, runs counter to the general objectives of the statute, and imposes burdens, conditions, or restrictions in excess of or inconsistent with the Owner Exemption, it is invalid.

### PRAYER

For these reasons, Dr. Jefferson respectfully requests that this Court affirm that part of the trial court's judgment invalidating the TBVME's rules.

---

daughter is subjected to TBVME prosecution and must prove that she did not take the job in order to circumvent the Act.

29

Respectfully submitted,


*/ s / David F. Brown*

Ryan Clinton
State Bar No. 24027934
rdclinton@dgclaw.com
DAVIS, GERALD & CREMER, P.C.
111 Congress Ave., Suite 2800
Austin, Texas 78701
Ph: (512) 537-9938
Fax: (432) 687-1735

David F. Brown
State Bar No. 03108700
dbrown@ebblaw.com
David P. Blanke
State Bar No. 02453600
dblanke@ebblaw.com
EWELL, BROWN & BLANKE, LLP
111 Congress Ave., 28th Floor
Austin, TX 78701
Ph: (512) 457-0233

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was sent this 8th day of September, 2015 as follows:


**VIA EFSP & EMAIL**
Mr. Andrew Lutostanski
andrew.lutostanski@texasattorneygeneral.gov
Mr. Ted A. Ross
tex.ross@texasattorneygeneral.gov
Office of the Attorney General of Texas
Administrative Law Division
P. O. Box 12548
Austin, TX 78711


/s/ David F. Brown
David F. Brown

**CERTIFICATE OF COMPLIANCE**

Relying on the word count function in the word processing software used to produce this document (Microsoft Word), I certify that the number of words in this brief (excluding the identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, signature, proof of service, certification, certificate of compliance, and appendix) is 5,222 and that the text of the document is in 14-pt. font.  The text of all footnotes is 12-pt.font.

*/s/ David F. Brown*
David F. Brown

# TAB A

*Texas Administrative Code* > *TITLE 22. EXAMINING BOARDS* > *PART 24. TEXAS BOARD OF VETERINARY MEDICAL EXAMINERS* > *CHAPTER 573. RULES OF PROFESSIONAL CONDUCT* > *SUBCHAPTER G. OTHER PROVISIONS*

## § 573.72. Employment by Nonprofit or Municipal Corporations

**(a)** A nonprofit or municipal corporation may employ or contract with a veterinarian to provide veterinary services in connection with sheltering, sterilization, vaccination, or other medical care and treatment of animals.

**(b)** Employment by or contractual service to a nonprofit or municipal corporation does not exempt the veterinarian from any of the provisions of the Veterinary Licensing Act or the Board's rules.

**(c)** Veterinarians employed by, or contracted to, nonprofit or municipal corporations shall be liable for any violations of the Act or rules occurring as a result of the practice of veterinary medicine or any veterinary services provided by the nonprofit or municipal corporation, including those occurring due to the acts or omissions of non-licensed employees of, or volunteers for, the nonprofit or municipal corporation.

## History

**SOURCE:**
The provisions of this § 573.72 adopted to be effective June 14, 2012, *37 TexReg 4229*

TEXAS ADMINISTRATIVE CODE

# TAB B

*Texas Administrative Code* > *TITLE 22. EXAMINING BOARDS* > *PART 24. TEXAS BOARD OF VETERINARY MEDICAL EXAMINERS* > *CHAPTER 573. RULES OF PROFESSIONAL CONDUCT* > *SUBCHAPTER G. OTHER PROVISIONS*

## § 573.80. Definitions

The following words and terms, when used in the Veterinary Licensing Act (Chapter 801, Texas Occupations Code) or the Rules of the Board (Texas Administrative Code, Title 22, Part 24, Chapters 571, 573, 575, and 577) shall have the following meanings, unless the context clearly indicates otherwise:

**(1)** Accepted livestock management practices--those practices involving animals raised or produced primarily for food, fiber, or other products for human consumption, and may include the following:

   **(A)** branding, tattooing, ear tags or identifying marks of any kind;

   **(B)** tail docking, except cosmetic tail docking that is performed for appearance purposes only;

   **(C)** earmarking;

   **(D)** routine dehorning, except cosmetic dehorning that reshapes or alters the poll area for appearance purposes;

   **(E)** castration;

   **(F)** non-surgical assistance with birthing;

   **(G)** implantation with approved implant products;

   **(H)** administration of a biologic, except where restricted by law to administration by a veterinarian, and not including deworming by use of stomach tubing;

   **(I)** artificial insemination;

   **(J)** shoeing and trimming hooves; and

   **(K)** application or administration of parasiticides, except where restricted by law.

**(2)** Designated caretaker--a person to whom the owner of an animal has given specific authority to care for the animal and who has not been designated, by using the pretext of being a designated caretaker, to circumvent the Veterinary Licensing Act (Chapter 801, Texas Occupations Code) by engaging in any aspect of the practice of veterinary medicine (including alternate therapies). A designated caretaker who treats an animal for a condition that the animal was known or suspected of having prior to the person being named a designated caretaker, is presumed to be attempting to circumvent the Veterinary Licensing Act unless the designated caretaker is following the instruction of a veterinarian and is under the appropriate level of supervision per board rules. In this situation, the designated caretaker may present evidence to rebut the presumption.

**(3)** Food production animals--any mammalians, poultry, fowl, fish or other animals that are raised primarily for human food consumption.

**(4)** Biologic--any serum, vaccine, antitoxin, or antigen used in the prevention or treatment of disease.

**(5)** Pregnancy testing--the diagnosis of the physical condition of pregnancy by any method other than the gross visual observation of the animal.

**(6)** Invasive dentistry or invasive dental procedures--exposing of the dental pulp, or performing extractions.

**(7)** Consultation--the act of rendering professional advice (diagnosis and prognosis) about a specific veterinary medical case, but does not include treatment or surgery.

**(8)** General Supervision--a veterinarian required to generally supervise a non-veterinarian must be readily available to communicate with the person under supervision.

**(9)** Direct Supervision--a veterinarian required to directly supervise a non-veterinarian must be physically present on the same premises as the person under supervision.

**(10)** Immediate Supervision--a veterinarian required to immediately supervise a non-veterinarian must be within audible and visual range of both the animal patient and the person under supervision.

**(11)** Official Health Documents--any certificate attesting to the health, vaccination status, physical condition and/or soundness of an animal.

**(12)** Specialist--a veterinarian that is a Board Certified Diplomate of a specialty organization recognized by the American Veterinary Medical Association.

**(13)** Non-veterinarian employee--an individual paid directly by a veterinarian for work involving the practice of veterinary medicine, as defined in the Veterinary Licensing Act, *Texas Occupations Code, § 801.002(5)*, regardless of the defined status of the employment relationship between the individual and the veterinarian under Internal Revenue Service regulations.

**(14)** Herd--a group of animals of the same species, managed as a group and confined to a specific geographic location. A herd may not include dogs, cats, any animal in individual training, or any animal that competes as an individual.

## History

**SOURCE:**

The provisions of this § 573.80 adopted to be effective June 14, 2012, *37 TexReg 4229*; amended to be effective December 25, 2012, *37 TexReg 9937*; amended to be effective August 29, 2013, *38 TexReg 5490*

**Annotations**

## Research References & Practice Aids

**CROSS-REFERENCES:**

This Section cited in *22 TAC § 573.19*, (relating to Dentistry).

TEXAS ADMINISTRATIVE CODE

# TAB C

CAUSE NO. D-1-GN-14-000287

| | | |
|---|---|---|
| ELLEN JEFFERSON, D.V.M., | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| | § | 127th JUDICIAL DISTRICT |
| TEXAS STATE BOARD OF VETERINARY | § | |
| MEDICAL EXAMINERS and NICOLE | § | |
| ORIA, in her official capacity as Executive | § | |
| Director, | § | |
| | § | |
| *Defendants.* | § | TRAVIS COUNTY, TEXAS |

## FINAL JUDGMENT

On August 4, 2014, Plaintiff, Ellen Jefferson, D.V.M. (Dr. Jefferson), and Defendants, the

Texas State Board of Veterinary Medical Examiners (TBVME), and Nicole Oria, in her official

capacity as Executive Director of TBVME, appeared with their attorneys of record and proceeded

to trial before the Court. The Court also heard argument on Defendants' Plea to the Jurisdiction on

that date. After considering the pleadings, motions, stipulations, the requests for judicial notice, the

evidence presented at trial, and the arguments of counsel, the Court renders final judgment as

follows:

The Court grants Defendants' Plea to the Jurisdiction in part and dismisses Dr. Jefferson's

claims under the Uniform Declaratory Judgment Act without prejudice. Dr. Jefferson must exhaust

her administrative remedies to challenge TBVME's factual findings and allegations and the

application of TBVME's rules to those findings and allegations. *See* Tex. Occ. Code Ann. §

801.004(1).

The Court finds that it does have jurisdiction under Section 2001.038 of the Administrative

Procedure Act ("APA") regarding certain rule challenges that Dr. Jefferson asserts. The Court finds

that TBVME's reliance on Section 2001.038(e) does not bar the Court's consideration of the

administrative rules at the core of the disputes presented in this suit. Under jurisdiction provided by Section 2001.038, the Court finds that the following rules are contrary to Section 801.004(1):

1) Board Rule 573.72, as written, violates the right of a non-profit or shelter to employ a licensed veterinarian and seek full protection of the ownership exemption for the treatment of their animals for which the shelter is the owner. *See* 22 Tex. Admin. Code § 573.72. If a veterinarian is employed by a non-profit or shelter, their handling of the care of the animals so owned by their employer will not be generally covered by the Act.

2). Board Rule 573.80(2) also fails to comply with the ownership exemption, since it creates a presumption that a person intends to evade the Act and then provides an impermissibly limited exception that requires the care of a veterinarian to prevent such violation. See 22 Tex. Admin. Code § 573.80(2).

The Court, however, does find that the ownership exception does not allow a veterinarian to ignore other laws outside the Act that relate to his or her veterinary license, including all laws relating to the handling of prescription drugs (dangerous or controlled). Because it is the veterinary license, not the ownership of the animals, that allows a veterinarian to take certain actions, those actions may be overseen by TBVME to ensure compliance. Such investigations and administrative actions are not categorically banned by the ownership exemption and the Court will not prevent TBVME from exercising its administrative powers to investigate such complaints. In exercising its quasi-judicial authority in overseeing the administrative process, however, TBVME must do so in accordance with the boundaries of the Act, and with proper and due regard for the ownership exemption, as mandated by the Texas Legislature.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Plea to the Jurisdiction is granted in part, pursuant to Section 2001.038 of the Administrative Procedure Act; that Board Rules 573.72 and 573.80(2) are found to be contrary to Section 801.004(1) of the

Veterinary Practice Act and therefore invalid; and this matter shall be remanded to the TBVME for further actions consistent with this order.

All costs of court are assessed against the party who incurred them. All relief not expressly granted herein is denied. This judgment finally disposes of all parties and all claims in the entire suit and is appealable.

Signed this _18_ day of November, 2014.

Gisela D. Triana
200th District Court
Travis County, Texas